Harold Kossover et al., Respondents, v Arnold Trattler, Appellant, et al., Defendant.

Second Department, September 8, 1981

APPEARANCES OF COUNSEL

*Anthony L. Schiavetti (Deffina & Blau, P.C. [Steven Bennett Blau]* of counsel), for appellant.

*Shayne, Dachs, Stanisci & Harwood (Norman H. Dachs* of counsel), for respondents.

OPINION OF THE COURT

Gulotta, J.

On or about January 2, 1975 defendant Arnold Trattler, a physician, commenced an action against the plaintiffs in the District Court, Nassau County, to recover the sum of $750 for professional services rendered to plaintiff Harold Kossover "on or about the 21st day of May, 1974", with interest "from May 21, 1974". A default judgment was entered in that action against the Kossovers on February 7, 1975. On March 22, 1976 plaintiffs commenced the instant action against Dr. Trattler and North Shore Hospital for medical malpractice allegedly committed during the period "between May 27, 1974 and June 22nd, 1974", in which issue was joined by the individual defendant on October 27, 1976. The defendant doctor thereafter moved,

*inter alia,* for leave to amend his answer to assert the affirmative defenses of *res judicata* and collateral estoppel, whereupon the plaintiffs cross-moved for leave to serve a supplemental bill of particulars. From the denial of his motion to amend his answer and for summary judgment (104 Misc 2d 424), the defendant doctor appeals.

We affirm. It is axiomatic that in order to invoke the principles of *res judicata* and/or collateral estoppel as a defense to an action, it must be established, *inter alia,* that "the issue in the prior action is identical [to], and thus decisive, of [the] issue [to be determined] in the current action" *(Gramatan Home Investors Corp. v Lopez,* 46 NY2d 481, 485). Thus, as was more fully expressed by Chief Judge CARDOZO in his landmark opinion in *Schuylkill Fuel Corp. v Nieberg Realty Corp.,* (250 NY 304, 306-307): "A judgment in one action is conclusive in a later one not only as to any matters actually litigated therein, but also as to any that might have been so litigated, *when the two causes of action have such a measure of identity that a different judgment in the second would destroy or impair rights or interests established by the first"* (emphasis supplied). In our view, the necessary identity of issues is lacking in the case at bar.

Here, according to the complaint in the prior action, the services upon which the doctor sued and recovered a judgment were rendered "on or about the 21st day of May, 1974", which is the same date from which the interest was designated to run. In fact, no other date was even mentioned in that action. The appellant, in our view, should be bound by this formal assertion, and should not now be permitted to argue that the judgment obtained in the District Court was for services rendered at any other time. Accordingly, when the plaintiffs commenced this action to recover damages resulting from the services rendered on and after May 27, 1974, we believe that an entirely new claim was asserted, as to which there was and could be no common issue. Thus, assuming the rule to be that a default judgment in favor of a doctor against his patient for services rendered *bars* a subsequent action for medical malpractice arising out of the rendition of the same services (see *Blair v Bartlett,* 75 NY 150; *Gates v Preston,* 41 NY

113; see, also, *Tillotson v Shulman,* 73 AD2d 688), we nevertheless believe that the principles of *res judicata* and collateral estoppel can have no application where, as here, the underlying services and, perforce, the issues necessarily determined in the prior action were in no respect the same (cf. *Blair v Bartlett, supra).* Since the prior action, *by its terms,* at most determined the value of services rendered up to and including May *21, 1974,* the plaintiffs, in all fairness, should not be precluded thereby from presently litigating the question of malpractice regarding the rendition of services thereafter. In short, appellant has failed to demonstrate the necessary identity of issues to preclude the later action (see *Gramatan Home Investors Corp. v Lopez,* 46 NY2d 481, 485, *supra; Schwartz v Public Administrator of County of Bronx,* 24 NY2d 65).

As the proposed amendment was patently insufficient, that branch of the appellant's motion which was for leave to serve an amended answer was properly denied (see *Etkin v Marcus,* 74 AD2d 633; *Molino v County of Putnam,* 30 AD2d 929). For the identical reason, the branch of his motion which was for accelerated judgment based upon the foregoing amendment was likewise properly denied.

GIBBONS, J. (concurring). The question presented for resolution on this appeal is whether a *judgment by default* in the amount of $750 obtained in the Nassau County District Court, by Dr. Trattler, the defendant physician herein, against the plaintiffs in this action, upon a cause of action for professional services rendered to his patient, plaintiff Harold Kossover, may provide a bar to the instant medical malpractice action thereafter instituted by the plaintiffs against, *inter alia,* the defendant physician. Said defendant's motion to amend his answer and for summary judgment dismissing the instant action on that basis was properly denied by Trial Term (104 Misc 2d 424).

The majority opinion relies upon the fact that a collateral estoppel may not operate here because of happenstance that the default judgment rendered in the District Court was based upon an allegation in the complaint alleging professional services rendered "on or about the 21st day of May, 1974", whereas the complaint in the instant action alleges the commission of medical malprac-

tice "between May 27, 1974 and June 22nd 1974". I cannot agree with my colleagues' efforts to escape the harshness of the rule permitting a default judgment to operate as collateral estoppel by relying on a narrow, technical approach. I am impelled to base my affirmance upon broader grounds.

I do not believe that a rule of law rooted in a century-old and antiquated concept that a *judgment by default* obtained by a physician in an action to recover for his professional services should be accorded the force of a collateral estoppel to preclude a subsequent action by his patient for medical malpractice, as expressed in *Gates v Preston* (41 NY 113 [1869]), *Bellinger v Craigue* (31 Barb 534 [1860]), and *Blair v Bartlett* (75 NY 150 [1878]), should be applied herein. To now impose such a rule of law would be to perpetuate a harsh result which is neither in keeping with our present day understanding of what is fair and just, nor with the state of the law on this subject generally prevailing in most other jurisdictions.

In what appears to be the majority rule, a collateral estoppel effect was not permitted to attach to a default judgment in the following cases: *Gwynn v Wilhelm* (226 Ore 606); *Sykes v Bonner* (1 Cin Super Ct Rep 464 [Ohio]; *Goble v Dillon* (86 Ind 327; *Lawson v Conaway* (37 W Va 159); *Jordahl v Berry* (72 Minn 119); and *Fall v Bennett* (248 F 491). Preclusion by collateral estoppel was not applied in the following cases where the patient appeared but did not "allege malpractice" either as a defense or by counterclaim: *Ressequie v Byers* (52 Wis 650); *Barton v Southwick* (258 Ill 515); and *Sale v Eichberg* (105 Tenn 333).

Legal scholars have almost universally condemned the application of collateral estoppel to judgments by default because of the hazards entailed and the destructive effect it has upon the rights of a defendant, who, in opting not to oppose one claim, finds that he loses another, a consequence which was never within his contemplation at the time of his default (see Ann., 49 ALR 546, 551; Ann., 128 ALR 472, 502; Ann., 77 ALR2d 1410, 1421; Restatement, Judgments, § 47, Comment *e;* and § 68, Comment *f;* Rosenberg, Collateral Estoppel in New York, 44 St. John's L Rev 165, 174-177; Note: Collateral Estoppel in Default

Judgments: The Case for Abolition, 70 Col L Rev 522; 5 Weinstein-Korn-Miller, NY Civ Prac, par 5011.30; Siegel, New York Practice, § 541, p 598).

The recognized inherent injustice of the rule permitting a judgment by default, obtained under such circumstances, to preclude the patient from thereafter seeking to recover damages for malpractice lies in the rationale that when served with the complaint in the action by the physician to recover his fee, the patient was merely called upon to respond to the demand for payment, and if he chose to default, such refusal to contest the amount of the bill should not be construed to mean that he was willing to assume the risk of forfeiting his right to select another time and another more appropriate forum to litigate on the merits his cause of action for professional negligence.

The *ratio decidendi* of the majority view is that, notwithstanding that the physician's cause of action for his services and the patient's action for malpractice are independent, it is only when the patient opts to contest the physician's action for his fee by asserting malpractice as a defense or counterclaim that the patient is thereafter precluded from asserting a cause of action for medical malpractice. A default by the patient, however, does not establish an estoppel.

In *Leslie v Mollica* (236 Mich 610, 615, 616) this rationale is expressed as follows:

"The suit in justice's court, by the physician for his services, did not draw in issue, by its own force, the patient's independent cause of action for malpractice. It was optional with the patient to make malpractice of the physician an issue in that suit, either to defeat recovery for services or to have damages awarded by way of recoupment or counterclaim, but this involved the hazard of losing all other remedy. It is true, respectable authority is found holding that a recovery for services by the physician bars an action for malpractice by the patient and in jurisdictions where such rule prevails the patient, when sued, is in quite a dilemma for, if he does not defeat the action for services the judgment for services is *res judicata* that there was no malpractice. Few cases, however, adopt such rule.

In some jurisdictions the rule only applies in case the patient appears and defends. The better view, we think, is that the actions, one by the physician for services and the other by the patient for malpractice, are *independent* and remain so unless and until the patient, when sued for services, injects the issue of malpractice either to defeat the claim or to obtain damages by way of recoupment or counterclaim." (Emphasis added.)

"We do not adopt the rule requiring the patient to make the defense of malpractice in justice's court when sued by the physician for services. He may do so, however. This court is committed to the doctrine that an *independent right of action* in behalf of one sued may be put in issue or withheld at the option of a defendant. *Mimnaugh v. Part-lin,* 67 Mich. 391." (Emphasis added.)

In *Ressequie v Byers* (52 Wis 650, 655-656, *supra*), speaking to the same issue, the court held: "The plaintiff's claim for damages resulting from malpractice constitutes *a separate and independent cause of action,* which he can enforce without disturbing any matter litigated in that case. [An action for services.] He was not compelled to make the defense before the justice that the defendant's services were of no value, in order to save his rights. He had his election either to recoup his damages *pro tanto* in the justice's court or go for his entire claim in this. It seems to us that this is the better and more convenient rule to lay down upon the subject. If the plaintiff were compelled to make his defense in the justice's court, that the professional services were of no value, and that he had been injured by the defendant's negligence, then it would follow that he must either split up his demand so that there might be two suits instead of one upon it, or content himself with merely defeating the claim for services, or limit his damages to $200, the extent of the jurisdiction of the justice. We are not inclined to adopt a rule which would lead to any such inconvenient consequences." (Emphasis added.)

In *Jordahl v Berry* (72 Minn 119, *supra*), the court stated the majority rule, to the effect that a judgment by default in action by a physician against his patient to recover for professional services is not a bar to an action by the patient

against the physician for damages caused by malpractice in the performance of such services. The court then proceeded to present the dilemma confronting a patient who opts to contest the professional fees by raising the issue of malpractice as a counterclaim, by stating (p 123): "if plaintiff had appeared and defended those actions, he would have been put to the alternative of alleging the malpractice as a mere defense, or of setting it up as a cross claim. In either case the judgment would be a bar or estoppel on that issue. If he had adopted the latter course, he could only have recovered $100, the limit of the justice's jurisdiction, and could never have recovered any more in another suit, because he would not be allowed to split a single cause of action. On the other hand, had he set up the malpractice merely as a defense, and the claims of the defendants for services were less than $15, the issue, involving a claim of $5,000, would have been conclusively determined by the judgment of the justice, from which neither party could appeal on facts."

The majority rule that collateral estoppel can result only from matters actually litigated also finds expression in section 68 of the Restatement of Judgments, as follows (p 293):

"(1) Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action, except as stated in §§ 69, 71 and 72.

"(2) A judgment on one cause of action is not conclusive in a subsequent action on a different cause of action as to questions of fact not actually litigated and determined in the first action."

In explaining this rule of law, section 58 of the Restatement of Judgments, presents the following illustration (p 232): "A, a physician, brings an action against B for medical services rendered to B. B fails to plead and judgment by default is given against him. B is not precluded from subsequently maintaining an action against A for malpractice and recovering for harm done to him by such malpractice."

In 1961 the Supreme Court of Oregon in *Gwynn v Wilhelm* (226 Ore 606, *supra),* in holding that a collateral estoppel will not be applied under these circumstances, followed the above-mentioned rule of the Restatement of Judgments and justified its refusal to adopt the New York rule for the following three reasons:

(1) Citing *Sykes v Bonner* (1 Cin Super Ct Rep 464, 466, *supra)* " 'It was certainly not necessary, in order to entitle the plaintiff in that case to recover [the fee for services rendered], that he should prove that he was not guilty of any negligence in his professional treatment. It was enough to show, simply, that he performed the services at defendant's request and their value, and the fact that the amount was due.' " *(Gwynn v Wilhelm, supra,* p 612.)

(2) Relying on the rule of *Jordahl v Berry* (72 Minn 119, *supra),* the court held that, under the New York rule, an injustice would be worked on the patient because the claim for medical malpractice could exceed the jurisdictional monetary limits of the court in which the default judgment was obtained.

(3) And, finally, as described in *Goble v Dillon* (86 Ind 327, *supra),* an action to recover the fee for services rendered is sometimes commenced to contrive a defense to a malpractice action in the form of a collateral estoppel which is there "characterized as odious" (p 339): "In New York *res judicata,* as to the negligence and unskillfulness, is made to depend upon the former judicial determination of the question of the value of the services, in the absence of any necessary consideration of the injury to the defendant, which, if considered, but not otherwise, would have led to a determination that the services were valueless. Such an estoppel may well be characterized as odious. One is struck with the frequency with which, in the reported cases, the suits for the services have been brought after the commencement of the actions for malpractice, as if for the purpose, which is sometimes declared, of preparing a defence *[sic]* for those actions. We have spoken of the hardship which may be imposed upon the plaintiff in the action for malpractice, if he be required at all events to defeat the claims for professional services. We are unwilling to ex-

tend the estoppel beyond the requirement of established principles."

Turning now to the New York cases to which reference was made above, it should be noted that in *Bellinger v Craigue* (31 Barb 534, 537, *supra*), where the defendant patient in the action for services had appeared but withdrew his answer, the resulting default judgment operated as a collateral estoppel in a subsequent malpractice action by the patient against the physician because the question of malpractice "was *impliedly* and *necessarily* within the issue joined before the justice, and its determination *necessarily* included in the judgment". This ruling was made by a divided court with one dissent.

In *Gates v Preston* (41 NY 113, *supra*) where, after the plaintiff patient had commenced a malpractice action against the defendant physician seeking damages of $5,000 and after the defendant had interposed his answer, the defendant began an action in the Justice of the Peace Court to collect his bill for services in the amount of $6.58. On the return date of that action, the patient executed and delivered a confession of judgment in that amount to the Justice with a consent to the entry thereof. The defendant physician in the malpractice action thereupon applied for leave to serve a supplemental answer setting up as a defense the confession of judgment in the Justice of the Peace Court. In overruling the plaintiff's demurrer to this defense, the court held that implicit in the confessed judgment was the admission that the medical services were properly performed and that such judgment operated as a bar to the plaintiff's action.

I do not view a judgment by confession the equivalent of a default, and, where, as in the instant matter, there was no response whatsoever to the defendant's District Court action, this difference is significant. I note that even in the *Gates* case *(supra,* p 116) the dissenting Justice "thought the question of malpractice not necessarily in issue before the justice". This case clearly points up the vice, to which reference was made above in *Sykes v Bonner* (1 Cin Super Ct Rep 464, *supra*), of permitting a judgment for services rendered in the amount of $6.58, where the issue of the physician's negligence had not been litigated, to operate as

a tactical tool to preclude a medical malpractice action for $5,000.

In *Blair v Bartlett* (75 NY 150, *supra)*, the court in affirming an order which reversed a judgment in favor of the plaintiff upon a verdict for $1,000 in a medical malpractice action, following the same reasoning, held that a prior default judgment in the sum of $28 for services rendered, obtained by the treating physician in the Justice's Court, constituted a bar to the malpractice action because, implicit in the finding that the fee was earned, there was also a finding that the treatment was beneficial and therefore not the proper subject for future litigation in the malpractice action by the patient.

The decisions in *Bellinger, Gates* and *Blair (supra)* provide the philosophic basis and are frequently cited in their progeny of cases in New York which espoused the doctrine that a judgment by default, obtained by a physician in an action for his fees, constituted a collateral estoppel and barred a subsequent action for malpractice by his patient, notwithstanding that the issue concerning the quality of the services was never litigated.

Apart from the fact that the quality of the physician's services was neither considered nor adjudicated by the court, the manifest inequity of the New York rule becomes apparent when considered in the following light.

If, in the District Court action brought by the appellant physician to recover his fee, the plaintiffs herein had opted to contest the matter by asserting malpractice as a defense or as the basis for a counterclaim, having selected that forum for an adjudication of their rights, they could not thereafter have been heard to complain that the District Court judgment should not operate as a collateral estoppel in the instant matter.

However, since the plaintiffs did not tender the issue of malpractice in the District Court, the rule of law, extant in most other jurisdictions to which reference was made above, which recognizes that the physician's action for his services is separate and independent of the patient's action for malpractice, should be applied. A default judgment in an action for services, in which, concededly, the issue of

malpractice had not been litigated, should not be given the penalizing effect of barring the plaintiffs' instant action.

Notwithstanding that the plaintiffs herein could have obtained full monetary recourse in the District Court action by way of counterclaim (UDCA, § 202), the fact remains that they did not elect to do so and the issue of malpractice was never considered or adjudicated there. To now preclude the plaintiffs' action by the application of collateral estoppel would be to effectively deprive them of their right to seek recourse at a time of, and in the forum of their choice.

Although it may be argued that collateral estoppel should also be applied to default judgments for the practical reason of limiting the amount of litigation now prevailing in our already overburdened judicial system, the degree of such expediency must be balanced against the fact that where, under such circumstances, a defendant defaults in an action for services, he does, in reality, spare the court the time and effort entailed in conducting a full trial on the issue of malpractice on the merits. However, if indiscriminately applied to default judgments, the bar of collateral estoppel, to the extent that it may discourage a party from defaulting because of his fear of preclusion, will have the counterproductive effect of increasing the workload of the courts.

In his treatise on Collateral Estoppel in New York (44 St. John's L Rev 165, 177), Professor Maurice Rosenberg of Columbia University School of Law, who had made a study of collateral estoppel for the Law Revision Commission in 1965, stated on this aspect of the matter, as follows: "It is unfair and unwise to go as far as the New York decisions do in enforcing estoppels on the basis of earlier defaults. The consequence is to make a default so perilous that a well-advised defendant will be driven to litigate any petty claim asserted against him if there is the slightest prospect that a buried issue may be foreclosed in a subsequent suit. In the end this could frustrate the very purpose of res judicata to reduce contention and dispute. Instead of more litigation later, there will be more litigating now."

In volume 5 of New York Civil Practice by Weinstein-Korn-Miller, it is stated (par 5011.30, pp 50-138, 50-139):

"In spite of the fact that no issues are actually litigated, New York courts have provided some support for the dangerous doctrine that a default judgment is to be given collateral estoppel effect and is to be considered conclusive between the parties with regard to all matters essential to sustain the judgment * * *

"Even the pressures resulting from delay in the courts and the desirability of terminating as much litigation as possible without a trial do not justify utilizing the doctrine of collateral estoppel in default-judgment cases."

To hold, under the circumstances of this case, that, implicit in the default judgment obtained in the District Court against the plaintiffs herein, in a physician's action in contract to recover a fee of $750, there was a concomitant adjudication on the merits of the instant malpractice action, would be to indorse an abhorrent result which does violence to the civilized concept that every person should have the right to fairly litigate his claims for redress on the merits in proceeding where the specific issues are submitted for resolution upon legal evidence.

In *Flanagan v Mount Eden Gen. Hosp.* (24 NY2d 427, 434), the Court of Appeals, in defining the obligation of our courts to re-examine the propriety of venerable precedents with an eye to correcting harsh and inequitable results, held as follows: "In *Woods* v. *Lancet* (303 N.Y. 349) we overruled a venerable precedent in order to give an injured child a cause of action for injuries occurring when it was a fetus. This despite legislative inaction. In *Woods* we stated: 'Surely, as an original proposition, we would, today, be hard put to it to find a sound reason for the old rule * * * Of course, rules of law on which men rely in their business dealings should not be changed in the middle of the game, but what has that to do with bringing to justice a tortfeasor who surely has no moral or other right to rely on a decision of the New York Court of Appeals? *Negligence law is common law, and the common law has been molded and changed and brought up-to-date in many another case. Our court said, long ago, that it had not only the right, but the duty to re-examine a question where justice demands it (Rumsey v. New York & N.E.R.R. Co., 133 N.Y. 79, 85, 86,*

and see *Klein* v. *Maronelas,* 219 N.Y. 383).' *(Id.,* p. 354.)"
(Emphasis added.)

The laws of this State should be brought into line with the mainstream of the foregoing general principles of law extant in most other jurisdictions and consonant with the following rationale expressed by the Supreme Court of the United States in *Cromwell v County of Sac.* (94 US 351, 356): "Various considerations, other than the actual merits, may govern a party in bringing forward grounds of recovery or defence in one action, which may not exist in another action upon a different demand, such as the smallness of the amount or the value of the property in controversy, the difficulty of obtaining the necessary evidence, the expense of the litigation, and his own situation at the time. A party acting upon considerations like these ought not to be precluded from contesting in a subsequent action other demands arising out of the same transaction. *A judgment by default only admits for the purpose of the action the legality of the demand or claim in suit; it does not make the allegations of the declaration or complaint evidence in an action upon a different claim.*" (Emphasis added.)

The harshness of collateral estoppel, under certain circumstances, is evident, and the Court of Appeals, in *Schwartz v Public Administrator of County of Bronx* (24 NY2d 65, 73), has recognized the need for selective control of its application. The court there stated (p 73): "No one would contend that the doctrine of collateral estoppel should be applied rigidly." It held that the litigant, upon whom this doctrine is sought to be imposed, should be required to assume the burden of convincing the court that the case is one where it should not apply. Clearly, the doctrine is both a practical and necessary principle of law to insure a "'prompt and nonrepetitious judicial system'" (p 69). However, the court continued to hold that among the list of the various factors which should enter into a determination as to whether a party has had his day in court would include "the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation * * * and foreseeability of future litigation" (p 72).

In commenting on the rationale expressed in *Schwartz (supra),* as a selective method of avoiding the recognized harshness of applying collateral estoppel indiscriminately in cases involving judgments by defaults, Professor David Siegel, in his treatise, New York Practice, states (§ 451, p 598): "Perhaps these criticisms, including this writer's, can today be met with more recent suggestions from the Court of Appeals. In a series of important later decisions, notably the *DeWitt* and *Schwartz* cases, a number of apparently sui generis factors have been set up as a kind of check list for a judge to go over before according an earlier judgment collateral estoppel respect in a later suit. Those factors * * * are as relevant to default and consent judgments as they are to contested ones and ought to be considered in all of them. By applying them, almost on a sui generis basis, a flexibility is introduced sufficient to deny estoppel effect to earlier default and consent judgments whenever one of the listed components — such as the smallness of the earlier claim and the consequent laxity in resisting it — suggests the denial. The result of such a fresh approach will be the overturning of some earlier precedents which gave default and consent judgments collateral estoppel fruits arbitrarily, without attention to such individual factors as the Court of Appeals today wants treated. *Independent evaluation of each case may be the only practical solution.* It seems a fair response to the problem, and a complete one to the critics." (Emphasis added.)

Following its holding in *Schwartz (supra)* that collateral estoppel should not, under all circumstances, be rigidly applied, the Court of Appeals, in *Gilberg v Barbieri* (53 NY2d 285, 292), in declining to permit a conviction after a nonjury trial in the City Court of Mount Vernon for the petty offense of harassment, designated as a violation in the Penal Law, to operate as a collateral estoppel in an action to recover $250,000 for assault in the Supreme Court, held: "The question as to whether a party has had a full and fair opportunity to contest a prior determination cannot be reduced to a formula. It cannot, for instance, be resolved by a finding that the party against whom the determination is asserted was accorded due process in the prior proceeding *(People v Plevy,* 52 NY2d 58, 65, *supra).*

The point of the inquiry, of course, is not to decide whether the prior determination should be vacated but to decide whether it should be given conclusive effect beyond the case in which it was made (see e.g., Restatement, Judgments, 2nd [Tent Draft No. 3], § 88, Comment *i).*" (See, also, *O'Connor v G & R Packing Co.,* 53 NY2d 278).

Accordingly, the order should be affirmed.

MANGANO and O'CONNOR, JJ., concur with GULOTTA, J.; GIBBONS, J., concurs in the result with an opinion, in which LAZER, J. P., concurs.

Order of the Supreme Court, Nassau County, dated May 13, 1980 affirmed, with $50 costs and disbursements.