OPINION OF THE COURT
Con. G. Cholakis, J.
On July 30,1980, the plaintiff was seriously injured in a motor vehicle accident when an automobile owned and operated by her was in collision with an automobile owned by one Joan M. Elmore and driven by one Craig R. Rockwell. A related action brought by the plaintiff against Elmore and Rockwell is now awaiting trial and the insurer of the Elmore-Rockwell vehicle has offered to pay plaintiff its entire liability policy limits of $10,000 in settlement (it appears established that there is no additional insurance coverage with respect to the Elmore-Rockwell vehicle). It is represented, however (and not contested), that the value of the plaintiff’s injuries far exceed $10,000 and that in all probability, should she proceed to trial, she would recover a judgment in a much greater amount than the offered sum.
The plaintiff had an “Underinsured Motorist Insurance” indorsement in her own automobile insurance policy which *722 contained a maximum liability coverage of $10,000 and in this action, she seeks a declaratory judgment determining defendant’s obligation under the indorsement.
The plaintiff takes the position that the indorsement provides additional insurance of $10,000 which can be used to satisfy any judgment taken against Elmore and Rockwell which exceed the limits of their insurance policy. The effect, of course, would be to make total coverage of $20,000 available to the plaintiff. The defendant, however, takes the position that its liability under the indorsement is reduced by any amount which is paid by the legally responsible parties (Elmore and Rockwell), since $10,000 is available under their policy, the plaintiff has no coverage available under her “Underinsured Motorist Insurance” indorsement. The defendant has, therefore, denied coverage.
In a previous motion for summary judgment made by plaintiff (Special Term, County of Rensselaer, Dec. 3, 1982), this court determined that her motion was premature and denied the requested relief. It was then reasoned that, should the plaintiff fail in her action against Elmore and Rockwell, or, if she succeeds and her judgment does not exceed the limits of the Elmore-Rockwell policy, it would be unnecessary to resolve the issues presented by this action. The plaintiff, however, now moves for reargument and has asked the court to note the language found at paragraph 2(b) of the indorsement which provides that the underinsured coverage will not apply if the plaintiff: “shall, without written consent from the company, make any settlement with any person or organization who may be legally liable therefore”.
Because of this provision the plaintiff finds herself in a situation where she cannot accept the Elmore-Rockwell offer of settlement, even though it is an offer of the full moneys available. She finds that she must instead proceed to trial and judgment and incur the attendant expense and delay. Otherwise, should the plaintiff settle, she would definitely lose the underinsured indorsement coverage, and she would never then be able to establish its meaning.
The prejudice existing in the situation has now become apparent. Absent a settlement consented to by the defen *723 dant, there clearly can be no underinsured motorist coverage unless there is first a judgment in excess of $10,000. Without judicial construction of the indorsement, the plaintiff must proceed to trial to obtain such a judgment, perhaps, only to find that there is no additional coverage in any event. If there is no additional coverage the plaintiff, of course, can presently safely accept the Elmore-Rockwell offer of the full and complete moneys available.
The existence of such prejudice can overcome arguments of prematurity. In Weinstein-Korn-Miller (NY Civ Prac, vol 3) it is observed (at par 3001.09b): “This limitation [of prematurity] is entirely justifiable because the assumption of jurisdiction in a case of this type frequently would result in a dissipation of judicial time and energy. However, when the probability of the event occurring is great or the declaratory judgment may have an immediate and direct impact upon the parties’ conduct, the existence of a contingency should not bar the suit.” (Emphasis supplied.)
As noted, here the probability of the plaintiff obtaining a judgment far in excess of the $10,000 offered and available is great. Here also, a determination of this declaratory judgment will, as illustrated, have a direct impact upon the plaintiff’s conduct.
It is additionally noted that the instant situation is not in any meaningful aspects unlike that found in Hollander v Nationwide Mut. Ins. Co. (60 AD2d 380). There, the court determined that a declaratory judgment action brought to obtain an interpretation of a disputed clause in an insurance policy should not await adjudication of the principal actions where, as here, the matter in dispute will not arise in those pending actions. Upon reflection, and noting these authorities and the circumstances presented, the court now determines that the issues “of this action are properly determined at this time. The merits of the plaintiff’s summary judgment motion must now be considered.
Upon the merits, in this court’s opinion, the plaintiff must succeed.
First, it is axiomatic that if there is ambiguity in the policy terms, the contract must be construed strictly against the defendant (see Government Employees Ins. Co. v Kligler, 42 NY2d 863). Next, it is noted that the face *724 sheet of the plaintiff’s policy shows a separate listing for both underinsured and uninsured indorsements, and the policy contains these separate and distinct indorsements. The plaintiff, by affidavit, has stated that she examined the face sheet of her policy and believed that she had purchased additional or excess insurance effective if she were injured in an accident with an automobile which was underinsured. As the plaintiff notes, the separate underinsured indorsement “must mean something”, but it means nothing if when one accepts the defendant’s interpretation.
Ambiguity, however, is not truly observed. The policy simply should be read and enforced in accordance with its clear and unambiguous terms {Government Employees Ins. Co. v Kligler, supra). The coverage is authorized by subdivision 2-a of section 167 of the Insurance Law. Under this statute the coverage is optional and is referred to as “supplementary uninsured motorist insurance for bodily injury”. The statute reads as follows: “Any such policy shall, at the option of the insured, also provide supplementary uninsured motorists insurance for bodily injury, in an amount up to the bodily injury liability insurance limits of coverage provided under such policy, subject to a maximum of one hundred thousand dollars because of bodily injury to or death of one person in any one accident and, subject to such limit for one person, up to three hundred thousand dollars because of bodily injury to or death of two or more persons in any one accident. Supplementary uninsured motorists insurance shall provide coverage, in any state or Canadian province, if the limits of liability under all bodily injury liability bonds and insurance policies of another motor vehicle liable for damages are in a lesser amount than the bodily injury liability insurance limits of coverage provided by such policy. As a condition precedent to the obligation of the insurer to pay under the supplementary uninsured motorists insurance coverage, the limits of liability of all bodily injury liability bonds or insurance policies applicable at the time of the accident shall be exhausted by payment of judgments or settlements.” (Emphasis supplied.)
The indorsement in plaintiff’s policy contains the following definition: “ ‘Underinsured motor vehicle’ means a land motor vehicle or trailer of any type with respect to the *725 ownership, maintenance or use of which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under this insurance” (Emphasis supplied.)
It is the court’s opinion that if a motorist is involved in an accident with an automobile carrying less bodily injury liability insurance coverage than is carried on his automobile, he has been involved in an accident with an underinsured motorist.
In other words, each motorist determines the amount of bodily injury liability insurance coverage he wishes to carry on his own automobile. Any other motorist, carrying less bodily injury liability insurance coverage, is, as to him, an underinsured motorist.
In this case, it has been established that the plaintiff’s automobile carried liability coverage of $100,000 per person at the time of the accident, while the Elmore-Rockwell automobile only carried liability coverage of $10,000 per person. The Elmore-Rockwell automobile was, therefore, clearly an underinsured motor vehicle when compared to plaintiff’s automobile.
In order to protect himself against a motorist carrying lesser amounts of insurance, one may purchase supplementary uninsured motorist insurance for bodily injury (underinsured motorists insurance). The amount of insurance thus purchased is subject to two limitations:
(1) it cannot exceed the bodily injury liability insurance coverage which he carries on his own automobile, and
(2) it cannot exceed $100,000 per person in any single accident or $300,000 per accident.
The plaintiff clearly purchased such underinsured motorists insurance having a limited liability coverage of $10,000 per person.
The dispute between the parties arises from the language contained in paragraph 3(b) of the indorsement which reads as follows:
“Any amount payable under the terms of this insurance because of bodily injury sustained in an accident by a *726 person who is insured under this insurance shall be reduced by:
“1. All sums paid on account of such bodily injury by or on behalf of
“(i) The owner or operator of the underinsured motor vehicle and
“(ii) Any other person or organization jointly or severally liable together with such owner or operator for such bodily injury including all sums paid under the bodily injury liability coverage of the policy”. (Emphasis supplied.)
This is, of course, the language relied upon by the defendant in its claim that plaintiff’s $10,000 underinsured motorist coverage must be reduced by the $10,000 available from the Elmore-Rockwell vehicle.
Defendant argues that “amount payable” refers to. the amount of coverage purchased by plaintiff ($10,000) which must then be reduced by the amount paid or to be paid by the carrier for the Elmore-Rockwell vehicle.
We must therefore determine the meaning of the words “amount payable”. To give them the meaning urged by the defendant would, in this case, render plaintiff’s underinsured motorist insurance valueless, an undesirable result.
In order to make that determination the entire indorsement must be examined more carefully.
Paragraph 1 of the indorsement reads as follows: “The company will pay damages which the insured or his legal representative shall be legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury, caused by accident and arising out of the ownership, maintenance or use of such underinsured motor vehicle.”
This clause obligates defendant to pay the full amount of plaintiff’s damages limited, of course, by the limits of its policy. This, then, is to what the words “amount payable” refer. It is this amount which must be reduced by the Elmore-Rockwell payment and this new amount becomes defendant’s obligation to pay up to the amount of its coverage.
*727 Plaintiff is accordingly awarded summary judgment to the extent consistent with this opinion.