OPINION OF THE COURT
Gerard E. Delaney, J.
This matter involves the determination of the rights of subrogation of an insurance company upon its payment of funds to its insured under “Supplementary Uninsured Motorist Insurance” (commonly known as underinsurance) under Insurance Law § 167 (2-a).
On August 5,1980, Helen Buxbaum, while operating a motor vehicle owned by her husband, Jeffrey Buxbaum, was involved *642 in a collision with a vehicle owned by William P. Cassidy and operated by William M. Cassidy on a public roadway in East Fishkill, New York. Helen Buxbaum was injured.
At the time of the accident, the defendant, William P. Cassidy, was insured under a contract of automobile liability insurance with the Allstate Insurance Company (hereinafter Allstate) with limits of liability for bodily injury of $50,000/$100,000. Helen Buxbaum was insured through her husband Jeffrey’s policy with the Metropolitan Property and Liability Insurance Company (hereinafter Metro), which policy contained an indorsement for Supplementary Uninsured Motorist Insurance with a limited liability of $100,000 pursuant tio Insurance Law § 167 (2-a). Such additional coverage is commonly known as underinsurance and, indeed, the policy issued by Metro to Mr. Buxbaum included as an amendment (subdivision 2b) the following definition: “The term ‘underinsured motor vehicle’ means a motor vehicle with respect to the ownership, maintenance or use of which the sum of the limits of the liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under this insurance.”
In a separate action, the Buxbaums brought suit against the Cassidys in Dutchess County Supreme Court under index number 3552/81. The Honorable Justice Joseph Jiudice granted plaintiffs’ motion for summary judgment by order dated May 3, 1982, stating “that this motion, being unopposed, is granted on the issue of liability only”. The damages issue was severed, later to have been determined by a jury.
Prior to any assessment of damages, defendants’ insurer, Allstate, offered to settle for the amount of $50,000, the limits of its policy and plaintiff granted a “conditional” release to the Cassidys on July 11,1983, which stated in substance that for the consideration of $50,000 the Buxbaums, the releasors, their ‘heirs, executors, administrators, successors and assigns” released William P. Cassidy and William M. Cassidy from all actions, causes of actions, suits and claims which arose out of the August 5,1980 automobile accident. Such release further stated “this release is conditional and limited to the cause of action for non-economic loss of Helen Buxbaum in the sum of $50,000.00 and 00/100 ($50,000.00), the releasee’s limit of available liability insurance. This release in no way impairs the rights of Helen Buxbaum or Metropolitan Property and Liability Insurance Company, as her subrogee, for any element of her damages above the sum of $50,000.00 and 00/100 ($50,000.00) paid to her by the releasee.”
*643 Helen Buxbaum then filed a claim against Metro on her own underinsured motorist supplemental coverage. Inasmuch as Metro was facing a $50,000 maximum payment under the terms of its policy and Insurance Law § 167 (2-a) ($100,000 supplementary uninsured motorist insurance less the $50,000 settlement with Allstate) Metro negotiated a settlement with Helen Buxbaum for $40,000 in return for which Helen Buxbaum executed a release and trust agreement in favor of Metro dated July 11 and July 5, 1983. It is noted that such actions between plaintiff subrogor, Helen Buxbaum, and subrogee, Metro, occurred on or before the actual release date of Helen Buxbaum to the Cassidys.
On or about September 19, 1983, Metro commenced suit as subrogee of Helen Buxbaum against William P. Cassidy and William M. Cassidy to recover the $40,000 payment to Helen Buxbaum under her underinsurance coverage with Metro. The instant motion is one for summary judgment brought by Metro inasmuch as it is claimed that the prior order of Justice Jiudice determined the issue of liability against defendants and there can, therefore, be no meritorious defense to this action.
Underinsurance is alluded to in Insurance Law § 167 (2-a) by the terminology “supplementary uninsured motorist insurance”. (See, Gull v General Ace. Fire & Life Assur. Corp., 121 Misc 2d 721, 724-725; Garry v Wordwide Underwriters Ins. Co., 120 Misc 2d 91.) “[I]f a motorist is involved in an accident with an automobile carrying less bodily injury liability insurance coverage than is carried on his automobile, he has been involved in an accident with an underinsured motorist”. (Gull v General Acc., supra, p 725.) In New York State, a motorist is either “insured” or “uninsured”. (Insurance Law § 5202 [A] [3], [4].)
Under the circumstances, plaintiff Metro, as subrogee of Helen Buxbaum, is a proper party in interest for purposes of bringing this action. (Cf. CPLR 1004.) Subrogation is not a transfer of a cause of action. (Cf. Liberty Mut. Fire Ins. Co. v Perricone, 54 AD2d 975 [2d Dept 1976].)
By virtue of the previous settlement between the individual plaintiffs and the defendants Cassidy, the $50,000 liability limits of the Cassidy Allstate policy was exhausted, which served as the condition precedent to the obligation of the insurer, Metro, to pay under the supplementary uninsured motorist insurance coverage issued to the Buxbaums (see, Insurance Law § 167 [2-a]) assuming that liability was established, and what turned out to be a settlement between Metro and Helen Buxbaum was reasonable. Otherwise, such moneys might be *644 considered voluntarily paid by Metro, and such payments would not be recoverable. (Cf. Codling v Paglia, 38 AD2d 154, 161, affd 32 NY2d 330.) Even had Helen Buxbaum settled for a lesser amount than the full amount of liability insurance carried by the defendants Cassidy, it would not be determinative of the amount of damages actually sustained by Helen Buxbaum. Settlements are often made for reasons which have little to do with the amount of damages sustained by the injured party. (Cf. Matter of Colonial Penn Ins. Co. v Salti, 84 AD2d 350, 354 [1st Dept 1982].)
“Upon payment of an existing debt by a party who is secondarily liable, the paying party is subrogated to the position of his principal and may proceed against the party primarily responsible. This right arises upon payment to the subrogor and, in general, may be created by contract or by operation of law. As an equitable doctrine in the context of insurance, an insurance carrier, upon payment of a loss, becomes subrogated to the rights and remedies of its assured to proceed against a party primarily liable without the necessity of any formal assignment or stipulation * * * [t]he right arises by operation of law out of the underlying relationship between the parties.” (New York Bd. of Fire Underwriters v Trans Urban Constr. Co., 91 AD2d 115, 119 [1st Dept 1983]; cf. Niemann v Travelers Ins. Co., 368 So 2d 1003 [La 1979], and Boudreaux v Government Employees Ins. Co., 454 So 2d 135 [La App, 1st Cir 1984], with Suhor v Gusse, 388 So 2d 755, 757, n 5 [La 1980].)
As indicated above, the initial action by the plaintiffs Buxbaum against the defendants Cassidy resulted in a “default” judgment only on the issue of liability. Defendants argue that the prior motion for summary judgment was not opposed and was, therefore, not a determination on the merits but rather, a judgment decision to waive the right to contest the liability “in that case only, to shorten the trial, defend the case on damages and the failure of the plaintiff, Helen Buxbaum, to mitigate those damages by the failure to properly use her seat belt”. However, it is now evident that New York has adopted the full and fair opportunity test in applying the doctrine of collateral estoppel. (Zdanok v Glidden Co., 327 F2d 944, 956 [2d Cir], cert denied 377 US 934.) “New York law has now reached the point where there are but two necessary requirements for the invocation of the doctrine of collateral estoppel. There must be identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and, second, there must have been a full and fair opportunity to contest the decision now said to be controlling.” (Shaid v Consolidated Edison Co., 95 *645 AD2d 610, 613-614 [2d Dept 1983].) Collateral estoppel is “a component of the broader doctrine of res judicata which holds that, as to the parties in a litigation and those in privity with them, a judgment on the merits by a court of competent jurisdiction is conclusive of the issues of fact and questions of law necessarily decided therein in any subsequent action” and “[as] a corollary to the doctrine of res judicata, [collateral estoppel] permits in certain situations the determination of an issue of fact or law raised in a subsequent action by reference to a previous judgment on a different cause of action in which the same issue was necessarily raised and decided”. (Gramatan Home Investors Corp. v Lopez, 46 NY2d 481, 485.)
It cannot be denied but that there was and is an identity of the issue of liability on the part of the defendants Cassidy, not only in this action but in the action previously decided by Justice Jiudice. Indeed, for purposes of the instant motion, this court deals with the same exact factual circumstances constituting the accident itself and responsibilities therefor. Collateral estoppel, however, “is a flexible doctrine which can never be rigidly or mechanically applied * * * [t]he point of the inquiry, of course, is not to decide whether the prior determination should be vacated but to decide whether it should be given conclusive effect beyond the case in which it was made.” (Gilberg v Barbieri, 53 NY2d 285, 292.)
“[T]he question as to whether a party had a full and fair opportunity to litigate a prior determination, involves a practical inquiry into the ‘realities of litigation. A comprehensive list of the various factors which should enter into a determination whether a party has had his day in court would include such considerations as the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation.’ ” (Gilberg v Barbieri, supra, p 292, citing Schwartz v Public Administrator of County of Bronx, 24 NY2d 65, 72.) Such considerations also include “the context and other circumstances which, although not legal impediments, may have had the practical effect of discouraging or deterring a party from fully litigating the determination which is now asserted against him”. (People v Plevy, 52 NY2d 58, 65.) However, in considering the issue of preclusion on the issue of liability, inasmuch as Metro, as subrogee of Helen Buxbaum, has no greater nor lesser rights as subrogor than she did as subrogee, the question then becomes a determination with respect to a particular issue made in the proceeding be *646 tween the two parties when the same issue was raised in this instant subsequent proceeding between the same two parties. “This is not an instance of issue preclusion in subsequent litigation between different parties, in which the question would be the effect to be accorded in a prior determination when the same issue arises in a subsequent proceeding to which one of the former litigants is a party but where the adversaries in the second proceeding are not the same as those in the first proceeding. Therefore [the decision] in Schwartz v Public Administrator of County of Bronx (24 NY2d 65)” is not on point. (Matter of American Ins. Co. [Messinger — Aetna Cas. & Sur. Co.], 43 NY2d 184, 190.) Apparently, the court does not apply the Schwartz analyses and principles to situations of issue preclusion between the same parties (supra, p 190; cf. Mayers v D’Agostino, 87 AD2d 519, 520; Heine v Gustafson Co., 118 Misc 2d 593, 597).
It should also be emphasized the prior decision by Mr. Justice Jiudice was not the classic “default” situation wherein one party does not appear in the action and a default is taken before the clerk. (Cf. Heine v Gustafson Co., supra.) The “default” which occurred on the part of defendants through their insurance company, Allstate, occurred on plaintiff’s prior application for summary judgment after issue had been joined and defendants purposefully elected not to answer same. Justice Jiudice granted judgment on the issue of liability and referred the issue of damages to inquest.
From the above discussion and taking into consideration the facts of this case and the procedures followed in the prior underlying case, it is clear to this court that for purposes of the instant matter, there is certainly an identity of parties (through subrogation) and identity of issues which were previously determined by Mr. Justice Jiudice, to wit, the liability of the defendants Cassidy in negligence. Defendants, in the previous action, had a full and fair opportunity to litigate the issue of their liability. While “it was a judgment decision (on defendants’ behalf) to waive the right to contest their liability in that case only”, for purposes of collateral estoppel, the issue of defendants’ liability has been actually litigated and determined by a court on the merits. “For preclusion purposes, an issue is actually litigated when ‘properly raised by the pleadings or otherwise, and is submitted for determination, and is determined’ ”. (Kret v Brookdale Hosp. Med. Center, 93 AD2d 449, 458.) (Compare the approach in the classic “default” situation as discussed in Kossover v Trattler, 82 AD2d 610.)
*647 The action was commenced within the three-year Statute of Limitations. (General Construction Law § 20.)
The two previous settlements in this matter, that of defendants with the individual plaintiff and the conditional release therein and the settlement by plaintiff with her underinsurer, Metro, however, resulted in no judicial finding on the element of damages or the reasonableness thereof. Indeed, the settlement in the first action resulted in a discontinuance of same after the judgment on liability against the defendants. While the issue of liability has been determined for the purposes of the instant matter, there still remains the issue of damages to be determined. This, in the court’s opinion, properly remains and the defendants by their previous payment and exercise of rights under the conditional release granted therein did not ever litigate the issue as to whether or not plaintiff subrogee’s original damages were in fact more than $50,000. Plaintiff subrogor, Metro’s liability under the policy of underinsurance was, under the operation of Insurance Law § 167 (2-a), properly limited to the sum of $50,000 after deducting the policy limits exhausted by payment from defendants’ carrier, Allstate, in the first action. What remains, therefore, is a determination by inquest as to the proper amount of damages suffered by plaintiff such as might extend into the underinsurance coverage. Should, for example, an inquest determine plaintiff’s damages to be $60,000, Metro might properly only recover $10,000 in its over-insurance payment inasmuch as they have already received credit for the initial $50,000 settlement by way of operation of Insurance Law § 167 (2-a). Should an inquest determine that plaintiff’s proper damages are less than $50,000, then it would appear proper at that point for a determination to be made that the payment of $40,000 by Metro was not reasonable under the circumstances and, therefore, considered voluntary payment on their behalf which is nonrecoverable as against the individual defendants.
Accordingly, plaintiff subrogor, Metro’s motion for summary judgment is granted as to liability only (see above discussion on collateral estoppel) and the issue of damages shall be severed and scheduled for an inquest by the filing of a hearing note of issue, payment of appropriate filing fees and scheduling same with the calendar clerk of this court’s Special Term.
Plaintiff shall comply with defendants’ demand for a bill of particulars and notice to produce previously served in this matter not later than 20 days after service by defendant upon plaintiff of a copy of this order with notice of entry thereon.