In re LADY LIBERTY TAVERN
CORP., Debtor.

BEAVER STREET
ASSOCIATES, Appellant,

v.

LADY LIBERTY TAVERN
CORP., Appellee.

Bankruptcy No. 86–B–12429 (BRL).

No. 87 Civ. 87–3632 (CSH).

United States District Court,
S.D. New York.

Dec. 27, 1988.

Weil, Gotshal & Manges, New York City, for appellant; Marvin E. Jacob, Mark Chinitz, Martin Minsky, of counsel.

Walter S. Jennings & Associates, P.C., New York City, for appellee; Walter S. Jennings, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This bankruptcy proceeding began when the Debtor, Lady Liberty Tavern, Corp. ("Lady Liberty"), filed a petition for reorganization under Chapter 11. A creditor, Beaver Street Associates ("BSA"), appeals from an order of the bankruptcy court (Lifland, J.) denying BSA's motion for a determination that the automatic stay under 11 U.S.C. § 362 either was inapplicable, or should be vacated, with respect to proceedings commenced in a New York state court by BSA to evict Lady Liberty from premises covered by a lease between the parties. We reverse.

## BACKGROUND

In 1984 Lady Liberty, as tenant, and BSA's predecessor-in-interest, as landlord, entered into a nine-year commercial lease for a term commencing October 1, 1984 of basement premises located at 82 Beaver Street, now known as 1 Wall Street Court, New York, New York.

Article 17.1 of the lease, whose pertinent provisions appear in the margin,[1] created a conditional limitation of its terms, exercisable by BSA as landlord in the event of Lady Liberty's defaults. Article 17.1 also

---

**1.** *If Tenant defaults in fulfilling any of the covenants of this lease* including the covenants for the payment of rent or additional rent ...; then, ... *upon Owner serving a written five (5) days notice upon Tenant specifying the nature of said default and upon the expiration of said five (5)* days, if Tenant shall have failed to comply with or remedy such default, or if the said default or omission complained of shall be of a nature that the same cannot be completely cured or remedied within said five (5) day period, and if Tenant shall not have diligently com-

menced curing such default within such five (5) day period, and shall not thereafter with reasonable diligence and in good faith proceed to remedy or cure such default, *then Owner may serve a written three (3) days notice of cancellation of this lease upon Tenant, and upon the expiration of said three (3) days, this lease and the term thereunder shall end and expire* as fully and completely as if the expiration of such three (3) day period were the day herein definitely fixed for the end and expiration of this lease and the term thereof. (emphasis added)

provided that upon termination of the lease in accordance with its terms, the debtor was obligated to surrender the premises to BSA, which had the power to re-enter the premises "and dispose Tenant by summary proceedings or otherwise ..."

Invoking the Article 17.1 machinery, BSA sent Lady Liberty a letter dated April 4, 1986 declaring Lady Liberty in default under the lease and setting forth 16 separate defaults. This was the "Notice of Default" letter contemplated by Article 17.-1. BSA then sent Lady Liberty a letter dated April 18, 1986 notifying Lady Liberty of the cancellation of the lease. This was the "Notice of Cancellation" letter also contemplated by Article 17.1, which reflected BSA's contention that Lady Liberty had failed to cure the defaults of which BSA had given notice.

On May 6, 1986 BSA commenced an eviction action in Civil Court, New York County. Lady Liberty appeared in that action through counsel, as required of a corporate party, and filed several motions. However, when the case was called for trial, Lady Liberty failed to appear or proceed to trial. Accordingly the Civil Court (Schwartz, J.) noted Lady Liberty's default, conducted an inquest, and on November 17, 1986 rendered a "final judgment of possession" in favor of BSA and against Lady Liberty, awarding to BSA "delivery of possession of the premises" at issue. Justice Schwartz' judgment recited the substance of the lease provision giving BSA the right to terminate the lease if Lady Liberty defaulted in fulfilling any of the leases covenants, and recited that Lady Liberty "defaulted in fulfilling certain covenants of the lease ..." Justice Schwartz stayed issuance of the warrant under his judgment for five days. During that period, Lady Liberty made no effort to re-open the default or obtain other relief from the Civil Court.

In accordance with § 749(1) of the N.Y. Real Property Actions and Proceedings Law, a warrant of eviction issued to a Marshal of the City of New York on December 17, 1986. The Marshal served a 72–hour notice of eviction on Lady Liberty on December 19, as required by § 749(2). Lady Liberty filed its Chapter 11 petition on December 22.

Upon that filing, an automatic stay of the state court eviction proceedings issued under the Bankruptcy Code, 11 U.S.C. § 362. Thereafter BSA appeared before Bankruptcy Judge Lifland on a litigated motion, seeking a determination that the stay either was inapplicable or should be vacated with respect to the state court eviction proceedings. In the alternative, BSA sought an order from the bankruptcy court directing Lady Liberty to vacate the premises it occupied under the lease. At the conclusion of an evidentiary hearing, the bankruptcy court issued rulings from the bench which it subsequently "so ordered." Tr. 410–438. Judge Lifland posed the key determination as being "whether or not there is any vitality in the Debtor's lease which is susceptible or subject to resuscitation for purposes of assuming or perhaps even assigning the lease." Tr. 410–411. He declined to hold that the lease had been terminated, Tr. 418, directed Lady Liberty to make timely monetary payments under the lease, and gave Lady Liberty sixty days to cure any non-monetary defaults. Tr. 419. From that order BSA appeals to the district court.

### DISCUSSION

We reverse the bankruptcy court on the authority of *Kelleran v. Andrijevic*, 825 F.2d 692 (2d Cir.1987), *cert. denied* —— U.S. ——, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988), which requires that preclusive effect be given to the state court judgment terminating the lease and awarding possession of the premises to BSA.[2] *Kelleran* arose out of disputes between partners who formed a corporation for the purpose of buying and developing real estate. One

---

**2.** While the court of appeals decided *Kelleran* after the bankruptcy court's ruling in the case at bar, the parties thoroughly discuss the opinion in supplemental briefs on this appeal. Nothing in *Kelleran's* rationale requires that its holding be applied only prospectively. The guiding principles are familiar enough; but in *Kelleran* they find recent and forceful expression by the Second Circuit in a bankruptcy context.

partner, Andrijevic, filed a mechanic's lien on real estate owned by that entity, called the Eighteen Mile Corporation. Eighteen Mile filed an answer denying Andrijevic's claim and counterclaiming for breach of contract and wilful exaggeration of the lien. Andrijevic defaulted on the counterclaims by not serving a reply. Subsequently, Andrijevic tried to reopen the default judgment, but was unsuccessful, the New York Supreme Court (Erie County) entering the judgment in favor of Eighteen Mile with respect to the counterclaims as to liability, and scheduling a damages inquest. Before that inquest could begin, Andrijevic commenced a bankruptcy proceeding which automatically stayed the state proceeding.

When Eighteen Mile filed proof of its claims in the bankruptcy court, the corporation sought in effect to enforce the state court default judgment. However, the bankruptcy court took the view that those claims were without merit, refused to give the state court default judgment binding effect, found for Andrijevic on the merits of the claims, and disallowed them. The district court affirmed, finding the corporation's claims to be "incredible." 825 F.2d at 694. The Second Circuit reversed both lower courts.

The court of appeals did so in the light of considerations summarized by Judge Meskill at the beginning of his discussion:

> "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so...." *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980) (citing 28 U.S.C. § 1738 (1982)). Bankruptcy courts fall within Congress' mandate. *See, e.g., In the Matter of Farrell*, 27 B.R. 241, 243 (Bkrtcy.E.D.N.Y.1982). The bankruptcy court, therefore, was bound to give preclusive effect to the default judgment obtained in the state court by Eighteen Mile to the same extent as would a New York court.

*Ibid.*

Turning to New York law, the court of appeals observed in *Kelleran* that "when a party defaults by failure to answer and the court orders an inquest as to damages, the defaulting litigant may not further contest the liability issues." 825 F.2d at 694. It followed, therefore, that the bankruptcy court "was bound to the liability determinations in the state judgment unless an exception existed to prevent operation of the judgment's preclusive effect. Bankruptcy courts may look beyond a state court default judgment where the judgment was procured by collusion or fraud, ... or where the rendering court lacked jurisdiction ...." *Ibid.* (citations omitted)

In the Second Circuit's view, the courts below in *Kelleran* led themselves into the error of "disregarding the preclusive effect of the state court judgment" by invoking non-existing equitable powers to characterize the corporation's claims as "so outrageous as to warrant independent review of the liability issues decided in the state." *Id.* at 695. The court of appeals itself apparently entertained some qualms concerning the underlying merits, but it made no difference; Judge Meskill concluded on the point:

> While the record strongly suggests that the merits of Eighteen Mile's claims are doubtful, Andrijevic should have attacked these claims in the state court. Bankruptcy proceedings may not be used to re-litigate issues already resolved in a court of competent jurisdiction. *Teachers Ins. & Annuity Ass'n of America v. Butler*, 803 F.2d 61, 66 (2d Cir.1986). The courts below erred in refusing to give preclusive effect to the state court judgment.

*Ibid.*

Several months earlier Chief Judge Brieant of this court reached a similar conclusion in *In re Cohoes Industrial Terminal, Inc.*, 70 B.R. 214, 218 (S.D.N.Y.1987), holding that a state court default judgment terminating the Debtor's leasehold interest in an apartment complex had preclusive effect in the bankruptcy court. While Chief Judge Brieant went on to observe that the default judgment "was upheld by the highest court in New York," *Id.* at 219, the exhaustion of the appellate process is

not necessary to establish the preclusive effect of a lower state court judgment. In *Kelleran,* the proceedings in which the debtor defaulted did not proceed beyond the trial court level. That is equally true of *Metropolitan Property & Liability Ins. v. Cassidy,* 127 Misc.2d 641, 486 N.Y.S.2d 843, 847 (N.Y.Sup.Ct.1985), a New York case cited by the Second Circuit in *Kelleran* as authority for the proposition that in New York "the defaulting litigant may not further contest the liabilities issues." 825 F.2d at 694.

With due respect, we conclude that the bankruptcy court fell into the same error identified by the Second Circuit in *Kelleran.* The Civil Court's judgment of possession was entitled to preclusive effect. It cannot be suggested that the Civil Court lacked jurisdiction, nor is there any basis in the record for concluding that the judgment was procured by collusion or fraud. At the conclusion of the evidence, Judge Lifland specifically stated that he was "not ascribing illegal motive to the landlord," Tr. 414. Rather, he took the view that the events revealed by the evidence made it "extremely uncomfortable to operate in a conciliatory or yielding way to smooth the relationship between the parties," *Ibid.,* in a case which "cried out for constructive cooperation, not divisiveness." Tr. 421. The bankruptcy court also commented on the differences of degree of sophistication of the parties. Tr. 413.

The bankruptcy court therefore stopped well short of that condemnation of the creditor's claims as an "outrageous," which was insufficient in law to avoid the preclusive effect of the state court default judgment in *Kelleran. Kelleran* applies *a fortiori.*

Lady Liberty argues that it defaulted in the Civil Court proceedings because it could no longer afford counsel; and that BSA's inequitable, overreaching tactics brought about that state of penury. These conclusory arguments do not withstand analysis. As noted, the bankruptcy court declined to condemn BSA's motives, after hearing the evidence. The most the bankruptcy court said about Lady Liberty's financial situation was this:

"It is not clear that the Debtor has not established that in part the landlord's activity played some substantial measure in the Debtor's financial problems and even continuing in obtaining its counsel." Tr. 416–417.

That assertion, balanced precariously upon a double negative, falls well short of laying the blame for Lady Liberty's default at BSA's doorstep. Indeed, it is clear enough from the bankruptcy court's findings that Lady Liberty had resources to continue to devote to this venture. In permitting Lady Liberty to continue on the lease, Judge Lifland observed: "The Debtor has not indicated any lack of wherewithal to accomplish many of the pedantic and narrow concerns that are raised in the so-called default notice." Tr. 422. If that is correct, and we accept it to be so, then there is no reason to believe that Lady Liberty was financially unable to continue representation by counsel in the state court proceeding. The necessity of representation by counsel stemmed from the decision of those concerned in Lady Liberty to operate in a corporate form.

Lady Liberty argues that BSA in some way waived its right to assert the preclusive effect of the Civil Court judgment by presenting evidence on the merits to the bankruptcy court. Indeed, Judge Lifland observed:

And, parenthetically, in going through the background of what I am dealing with, I am actually and I have been trying the case apparently with either a tacit or consent of both parties, the actual consent of both parties or by virtue of the testimony that's offered by both parties, I am trying the ultimate issue, which would have been tried in the State Court were I to have sent the parties back to the State Court to determine whether or not the warrant should be vacated.

That would be a total waste of judicial energy, squandering of resources for both parties to have to go through that litigation and almost start de novo. Tr. 416.

It is impossible not to sympathize with these perceptions, nor to express anything but praise for the bankruptcy court's fact finding processes, once embarked upon. But *Kelleran* requires the conclusion that the process should not have been embarked upon. And we cannot accept the suggestion, explicit or tacit, that BSA waived the right to argue for the preclusive effect of the state court judgment, or should somehow now be estopped from relying upon that doctrine on this appeal. The case was tried to the bankruptcy court on alternative theories, but counsel for BSA said to the bankruptcy judge before any evidence was called:

> I don't think you will get to the equities at the time the lease was terminated. There is a finding of the State Court that the lease was properly terminated in accordance with its terms. Tr. 14.

So there was; and the state court's consequent judgment of possession in BSA's favor is entitled to preclusive effect. Lady Liberty having failed to avail itself of any of the remedies available in such cases under New York law, *see, e.g., Fifty States Management Corp. v. Pioneer Auto Parks, Inc.*, 46 N.Y.2d 573, 415 N.Y.S.2d 800, 389 N.E.2d 113 (1979); *First Nat. Stores v. Yellowstone Shopping Center*, 21 N.Y.2d 630, 290 N.Y.S.2d 721, 237 N.E. 2d 868 (1968), the lease was terminated by virtue of the Civil Court's default judgment.

In *Fifty States*, New York's highest court dealt with a monetary default in a 20–year lease between commercial parties. The lease contained a clause providing for the acceleration of the rent due for the entire lease term upon the tenant's default in the payment of a single monthly rental installment. The Court of Appeals enforced the acceleration provision following a default by the tenant, rejecting the tenant's contention that enforcement constituted a penal forfeiture, disfavored by equity. The court stated generally at 415 N.Y.S.2d 803, at 389 N.E.2d 116:

> Absent some element of fraud, exploitive overreaching or unconscionable conduct on the part of the landlord to exploit a technical breach, there is no warrant, either in law or equity, for a court to refuse enforcement of the agreement of the parties.

In the case at bar, the lease provided for termination if Lady Liberty failed in its obligation promptly to pay rent; and evidence adduced before Justice Schwartz at the Civil Court inquest demonstrated repeated failures in timely rent payments, complicated by bounced checks, and an amount in excess of $90,000 owing at the time of the inquest.

In *First Nat. Stores* (also popularly known as the "Yellowstone decision"), the Court of Appeals dealt with a non-monetary default. Again, the landlord was held entitled to terminate the lease, the tenant having failed to obtain a temporary restraining order until after the landlord sent a notice of termination consistent with the lease's provisions. The Court of Appeals reversed the Appellate Division for granting the tenant an additional 20 days to cure the default, relief the Court of Appeals said the lower court was "powerless" to grant "absent a showing of fraud, mutual mistake or other acceptable basis of reformation." 290 N.Y.S.2d at 725, 237 N.E.2d at 871.

Accordingly it is the practice of New York's highest court to enforce lease termination provisions such as these, in the absence of particular showings which, as noted *supra*, have not been made in the case at bar.

In his judgment, Judge Lifland relied upon *In re Waterkist Corp.*, 775 F.2d 1089 (9th Cir.1985). In that case, the tenant leased a warehouse from the City of Valdez, Alaska. The tenant defaulted in payment of the rent. After the grace period provided by the lease expired, and consistent with the landlord's remedies under the lease, the city council sent a declaration of termination to the tenant on February 23, 1984. The tenant filed a chapter 11 bankruptcy petition on February 28. The Ninth Circuit affirmed the holding of the bankruptcy court that the tenant-debtor could assume the lease as a debtor-in-possession. In doing so, the court of appeals relied

upon anti-forfeiture aspects of Alaska law. The court of appeals was also careful to observe: "Even though the lease was terminated before the bankruptcy petition was filed, the City would have to bring an unlawful detainer action to regain possession." The city had not commenced a state court proceeding before the tenant filed its bankruptcy petition.

*Waterkist* furnishes no guidance in the case at bar. First, New York law governs, not the law of Alaska, and, as indicated, the controlling New York decisions support BSA's termination of the lease at bar. Second, BSA obtained a judgment in a state court eviction proceeding, thereby implicating the principle of preclusion articulated in *Kelleran*. Preclusion was not a factor in *Waterkist*.

It is of no consequence that Lady Liberty forestalled execution of the warrant by filing its chapter 11 petition at the literal last hour.

Accordingly Lady Liberty's leasehold interest in the premises had terminated before it filed its bankruptcy petition. It follows, in Chief Judge Brieant's words in *Cohoes, supra*, that "the automatic stay does not operate to enjoin actions respecting property in which the debtor no longer has an interest at the time of the filing of the petition." 70 B.R. at 218.

The order appealed from is reversed, and the case remanded to the bankruptcy court for further proceedings consistent with this opinion.[3]

---

**3.** In its sur-reply brief, Lady Liberty asks in the alternative that in the event of reversal, this court should continue the stay of execution of the state court judgment against the debtor's property for a period of two weeks, "in order to permit debtor to move in the state court to vacate the default judgment." Brief at 13. This alternative request was not fully addressed by both parties in the briefs, and we express no view on the issue, leaving the application to be made to the bankruptcy court in the first instance.