In re COHOES INDUSTRIAL TERMINAL, INC., Debtor.

LATHAM SPARROWBUSH ASSOCIATES, Appellee,

v.

COHOES INDUSTRIAL TERMINAL, INC. and Gloria F. Baker, Appellants.

No. 86 Civ. S736–CLB (86 B 20201).

United States District Court, S.D. New York.

Dec. 23, 1986.

As Modified Feb. 18, 1987.

Leon C. Baker, White Plains, N.Y., for appellants.

David Siegal, Zubres, D'Agostino & Hoblock, Albany, N.Y., Taylor, McCullough, Goldberger, Geoheagan and Friedman, White Plains, N.Y., for appellee.

## MEMORANDUM AND ORDER

BRIEANT, Chief Judge.

On this appeal fully submitted on October 9, 1986, the Debtor in this Chapter 11 reorganization proceeding seeks to review an order of the Bankruptcy Court (Schwartzberg, J.) issued June 12, 1986. *In re Cohoes Industrial Terminal, Inc.*, 62 B.R. 369 (Bkrtcy.S.D.N.Y.1986). The parties to the dispute herein are adversaries in at least four separate lawsuits in the state and federal courts, making for a voluminous record on appeal.

On April 28, 1986, the Debtor filed a Chapter 11 petition. Prior to that date and continuing to the present time, the Debtor has been involved in litigation in the New York state courts regarding leasehold rights to an apartment complex now owned by Latham Sparrowbush Associates as landlord. By notice of motion dated May 7, 1986, Latham Sparrowbush Associates ("LSA") moved the Bankruptcy Court for an order declaring the automatic stay inapplicable to the disputed leasehold interest on the ground that the leasehold had been terminated prior to the filing of the petition. In the alternative, LSA moved for an order vacating the automatic stay to allow the state court to proceed on LSA's post-judgment motion for an order specifically directing the state court appointed post-judgment receiver to transfer the Debtor's interest in the subject premises to LSA.

The Debtor then moved the Bankruptcy Court for an order adjudging LSA and the state court post-judgment receiver in contempt of the Bankruptcy Court for alleged violations of the automatic stay. The secretary of in the Debtor corporation, Gloria F. Baker, moved for an order directing the Debtor to transfer to her "the legal title to the tenant's interest" in the leasehold, asserting that she is actually the equitable owner of the lease, while the Debtor is only her nominee. The "tenant's interest" in the leasehold at the time of the motion consisted of the right to $350,000.00 compensation for early termination of the lease, payable, under the terms of the lease (quoted below) to the lessee.

The claimed nominee relationship appears to be verbal, and no memorandum thereof was ever properly recorded in the land records of Albany County.

Both the Debtor and Mrs. Baker are represented herein by Leon C. Baker, Esq., Mrs. Baker's husband and President of and sole shareholder in the Debtor.

The Bankruptcy Court ruled that the automatic stay does not operate to enjoin LSA and the receiver from enforcing any rights which LSA may claim with respect to the leasehold, because the Debtor's interest was terminated by a pre-petition state court order. Accordingly, the Debtor's contempt motion was denied. Mrs. Baker's motion was denied as not in the best interests of the estate.

THE STATE COURT ACTIONS

Since 1968, LSA has owned the fee of an apartment complex called Sparrowbush Apartments in Latham, New York. It had executed a lease at that time and in 1973 the interest of the tenant thereunder was assigned to the Debtor. On December 26, 1984, LSA gave notice of its exercise of an option to terminate the lease, effective sixty days from the giving of notice, pursuant to Article 32 of the lease. Article 32 reads in pertinent part:

"Section 32.01 The Landlord reserves the right to terminate or receive an assignment of the lease and the term hereof, upon giving sixty (60) days notice in writing to the Tenant of Landlord's intention so to terminate the lease and the lease shall cease, determine and end at the expiration of sixty (60) days from the day when such notice is given. The landlord shall pay to the tenant as the consideration for the surrender of the demised premises, the sum of $350,000.00 in cash or certified check to the order of the tenant. . . ."

By letter dated December 27, 1984, the Debtor acknowledged receipt of the notice, but disputed the legal validity or effectiveness of Article 32 of the lease under New York law.

On January 12, 1985, Mrs. Baker commenced an action in New York State Supreme Court, Westchester County, against LSA seeking a judgment declaring Article 32 of the lease invalid as violative of state law (the Westchester action). She did not request an adjudication of her claim to be the equitable owner of the lease. On February 8, 1985, Mrs. Baker moved for summary judgment. LSA cross-moved to dismiss the complaint on the ground that Mrs. Baker lacked standing to sue because she had no connection with the lease.

By decision entered April 30, 1985, and order dated June 20, 1985, Justice Cerrato of the Supreme Court of New York, Westchester County dismissed Mrs. Baker's complaint on the ground that under New York law, a suit challenging a lease provision must be brought by the named tenant. The relevant portion of the court's opinion reads:

"Although plaintiff contends that this corporation [Cohoes Industrial Terminal, Inc.] is her 'nominee', she has no right to substitute her own individual person in the place and stead of the corporation and to commence litigation questioning the validity of the Lease to which she is not a party.... The corporation is the proper party plaintiff, since this is not a derivative suit.

"Accordingly, this Court rules that the plaintiff is a legal outsider to this Lease and has absolutely no standing to bring an action for declaratory judgment questioning the validity of a paragraph in the subject Lease. Accordingly, the complaint is dismissed. This Court reaches and decides no other issue." *Baker v. Latham Sparrowbush Associates*, Index No. 1699–85 (April 30, 1985).

Mrs. Baker's motion to reargue was denied. An Appeal of the matter is *sub judice* at this writing.

Meanwhile, anticipating that the Debtor would not quit the premises as required by the notice of termination, LSA commenced an action against the Debtor in the Supreme Court of New York, Albany County, on February 13, 1985 (the Albany action). LSA sought specific performance of Article 32's termination provision. On February 25, 1985, LSA's exercise of its option to terminate the lease became effective, and as feared, LSA was unable to recover possession of the premises. On March 15, 1985, the Debtor defaulted in answering in the Albany action. Therefore, on April 18, 1985, a default order and judgment was signed by Justice Kahn of the Supreme Court, Albany County, which (1) declared Article 32 of the lease to be valid, binding and enforceable; (2) directed the Debtor to deliver possession of the leased premises;

and (3) ordered that, upon delivery of possession, LSA tender to the Debtor a certified check for $350,000.00 payable to the Debtor.

The Debtor challenged the default judgment claiming that it had no notice of LSA's action because of improper service of process. On May 20, 1985, Justice Kahn denied the Debtor's motion to vacate the default judgment. On October 10, 1985, the Appellate Division, Third Department, unanimously affirmed, holding that the Debtor was properly served through the Secretary of State and that, in any case, the Debtor had actual notice of the lawsuit in time to defend. On December 20, 1985, the Appellate Division denied the Debtor permission to appeal to the New York Court of Appeals. *Latham Sparrowbush Associates v. Cohoes Industrial Terminal, Inc.*, 114 A.D.2d 584, 494 N.Y.S.2d 195 (3d Dep't 1985). The Court of Appeals denied the Debtor's motion for leave to appeal on February 13, 1986, 67 N.Y.2d 736, 500 N.Y. S.2d 100, 490 N.E.2d 1226 (1986), and denied the Debtor's motion for reargument on March 27, 1986.

Also on March 27, 1986, Justice Kahn of the Supreme Court, Albany County, signed an order which: (1) appointed a post-judgment receiver for the collection of rents on the apartment complex; (2) ordered that the receiver take possession of the premises and that the tenants and anyone without a valid lease surrender possession; (3) authorized the receiver to manage the property; and (4) ordered the Debtor and all persons other than the receiver to refrain from collecting rents or interfering with possession, and to transfer to the receiver all security deposits until possession is delivered to LSA. After Justice Kahn declined to stay the order pending appeal, the receiver took possession on March 28, 1986.

In response to the Debtor's failure to obey certain commands of Justice Kahn's order, for example, its failure to return the security deposits promptly, LSA and the receiver filed numerous contempt motions in the state court. These motions were

prosecuted subsequent to the filing of the Debtor's bankruptcy petition on April 28, 1986, and were ultimately granted.

LSA also moved the court in the Albany action for an order directing the receiver to deliver possession of the premises to LSA. After the Bankruptcy Court ruled that the automatic stay did not apply to the property, Justice Kahn granted LSA's motion on July 1, 1986. Contrary to Mrs. Baker's contention, Justice Kahn's order in no way made the transfer of possession to LSA "subject to the rights of Gloria Baker." The July 1st order does not recite such language or any language that could fairly be read to convey a similar restriction on the transfer. The transfer of possession to LSA was intended to and did bring an end to any dispute over LSA's right to possess the premises.

On July 2, 1986, possession of the premises was delivered to LSA and LSA tendered the lease termination payment in the amount of $350,000.00 to the Debtor on the same day. The termination payment is presently an asset of the Debtor's estate.

Around this time, although exactly when is not made clear in the record on appeal, Mrs. Baker moved to intervene in the Albany action, which motion was denied by Justice Kahn. Mrs. Baker also has instituted a second action in Supreme Court, Westchester County to hold LSA as a constructive trustee of the tenant's interest in the leasehold. LSA's motion to transfer venue in that action to Albany County was granted in November 1986, and motions for summary judgment are pending there.

THE MOTIONS IN BANKRUPTCY COURT

Meanwhile, in Bankruptcy Court, LSA had moved for relief from the automatic stay on May 7, 1986. On May 12, 1986, the Debtor brought an order to show cause to punish LSA and the state court post-judgment receiver for perceived violations of the automatic stay. On May 29, 1986, Mrs. Baker brought an order to show cause to have the Debtor transfer to her the legal title to the apartment complex so that she could seek to litigate in state court her claimed ownership of the leasehold against the claims of LSA. LSA's motion was granted and the other two motions were denied by Judge Schwartzberg's decision dated June 12, 1986.

■ The motions by LSA and the Debtor implicate the issue of whether or not the automatic stay under 11 U.S.C. § 362 is applicable to a lease which LSA claims was terminated before the commencement of this case. Section 362(a) stays any act to obtain possession of property of the estate, including the enforcement of a judgment, obtained before the commencement of the bankruptcy case, against the property of the estate. The term "property of the estate" is defined and delineated in 11 U.S.C. § 541, which provides in relevant part that the estate is comprised of ". . . all legal and equitable interests of the debtor in property as of the commencement of the case." Thus, the automatic stay does not operate to enjoin actions respecting property in which the debtor no longer has an interest at the time of the filing of the petition. The dispositive question here is whether and when the default judgment in the Albany action terminated the Debtor's leasehold interest in the apartment complex.

■ The validity and extent of the Debtor's leasehold property interest is a matter of New York law. Neither this Court nor the Bankruptcy Court has any authority to review the New York state courts' final determination as to the ownership of the leasehold. Under 28 U.S.C. § 1738 (1976), federal courts must afford the same full faith and credit to state court judgments that would apply in the state's own courts. Because the New York law of *res judicata* would preclude the New York state courts from permitting the Debtor to relitigate its claims to the leasehold, this court and the Bankruptcy Court are equally barred from doing so. *Kent v. New York City Dep't of Sanitation*, 549 F.Supp. 570, 571–72 (S.D. N.Y.1982), *aff'd without opinion*, 722 F.2d 728 (2d Cir.), *cert. denied*, 464 U.S. 941, 104 S.Ct. 357, 78 L.Ed.2d 320 (1983).

■ The default judgment obtained in the Albany action was upheld by the highest court in New York. The questions of jurisdiction and due process were thoroughly litigated. These proceedings conclusively determined that the Debtor had actual notice of the Albany action terminating its rights under the lease. The Debtor must suffer the default judgment: it is final and binding. Nor can the Debtor be heard to attack that judgment collaterally in this Court by arguing that LSA improperly failed to name Mrs. Baker as a defendant in the Albany action. The default judgment was upheld on Debtor's appeal in the New York action in spite of this claim; hence Debtor is not entitled to relitigate this claim here. In so holding, neither this Court nor the Bankruptcy Court intends to suggest that Mrs. Baker is bound by the default judgment in Albany County to which she is not a party.

■ Furthermore, there is no reason why the discretion of the Bankruptcy Court should be exercised in favor of permitting relitigation here. The possibility that the various lawsuits pending in the New York state courts may be amenable to further appeals which might be resolved in the Debtor's favor does not undermine the Albany judgment's finality for the purposes of *res judicata*. *Bittner v. Huttger*, 550 F.Supp. 9, 12 (S.D.N.Y.1981), *aff'd without opinion*, 697 F.2d 288 (2d Cir.1982). Thus, the default judgment binds the Debtor and LSA on the issues and claims decided therein.

■ This brings us to the question of what issues and claims the default judgment decided. The parties and the Bankruptcy Court have expended much effort attempting to characterize the Albany action in accordance with the nomenclature of the New York Real Property Actions and Proceedings Law (RPAP). LSA's complaint in the Albany action sought a declaration that Article 32 of the lease was valid and demanded specific performance of its terms in light of an alleged anticipatory breach. That breach came to pass on February 25, 1985, the date the termination notice became effective. Under the terms of the lease, the Debtor's interest in the property ceased at that time and the Debtor was required to quit the property. *E.g., Realworth Properties, Inc. v. Bachler*, 33 Misc.2d 39, 45, 223 N.Y.S.2d 910, 915 (Sup. Ct.Monroe Cty.1962) (In declaratory judgment action, held that "the lease ... terminated according to its terms [ten days after termination notice served], and plaintiff's interest therein ceased at that time.").

By retaining possession of the premises, the Debtor gave LSA the option of bringing a summary eviction proceeding against the Debtor for "holding over." New York RPAP § 711. However, LSA was not required to institute a second, separate lawsuit, but could seek ejectment in the first, which LSA did. Finding no necessity for formally recasting this action under the real property laws, Justice Kahn entered the equivalent of a judgment in ejectment on April 18, 1985, by directing the Debtor to deliver possession within thirty days of being served with the default judgment.

Construing the relief granted by Justice Kahn as tantamount to affirmative relief in an action for ejectment, New York RPAP § 601 *et seq.*, Judge Schwartzberg found that the default judgment extinguished the Debtor's right to possession and held that

> "Any question of [the default judgment's] finality was settled ... by the New York Court of Appeals' denial on March 27, 1986 of the debtor's motion to reargue [the] appeal. By the most generous construction, it was finally determined on March 27, 1986, that the lease had terminated and the debtor had no cognizable interest or possessory right to the leasehold premises."

By this reasoning, the Debtor's interest in the property terminated prior to the imposition of the automatic stay on April 28, 1986.

In a plenary action such as the Albany action, an order of the court extinguishing the tenant's right to possession terminates the landlord-tenant relationship, regardless of the tenant's continued unauthorized possession of the premises. Thus, the Debt-

or's interest in the apartment complex was entirely extinguished and its landlord-tenant relationship with LSA was cancelled as of February 25, 1985, for the purposes of the automatic stay regardless of the Debtor's continued possession. *See In re Cowboys, Inc.,* 24 B.R. 15, 16 (Bkrtcy.S.D.Fla. 1982) ("... the lease in question has been terminated by a judgment of a state court, and would not be an asset of the estate.... Possession alone is insufficient for the bankruptcy court to fashion some equitable remedy for a debtor."); *In re Darwin,* 22 B.R. 259, 263 (Bkrtcy.E.D.N.Y.1982) (landlord seeking to oust debtor from possession was entitled to have automatic stay lifted because "the bankruptcy court cannot resurrect a lease terminated prior to the filing of the petition."); *see also In re W.A.S. Food Service Corp.,* 49 B.R. 969, 972 (Bkrtcy.S.D.N.Y.1985) (the mere possibility that the landlord-tenant relationship would be restored in subsequent litigation "does not vest the debtor with a sufficient interest in the leased property to allow assumption and assignment of the lease.").

■ On this appeal, the Debtor repeats its claim that it has little connection to the property. The Debtor argues that the Albany action cannot be characterized as one for ejectment, as it allegedly was not in possession of the leasehold, and actions for ejectment are properly brought against "the occupant" of the property. New York RPAP § 631.

It is undisputed that possession amounting to occupancy does not require personal presence on the property. An owner is deemed to be in possession through the presence of tenants, employees, and other agents. If this were not so, a corporation such as the Debtor could never qualify as an "occupant" under § 631, and could never be the subject of an ejectment action.

Neither the Debtor nor Mrs. Baker maintained a physical presence on the premises. To the extent Mrs. Baker managed the property, the reasonable inquirer was entitled to conclude that she was acting as the Debtor's agent. Inspection of the property or the public records would not reveal information amounting to constructive notice that Mrs. Baker was an occupant of the premises, let alone the sole occupant, as the Debtor now alleges. Rather the information upon which LSA was entitled to rely justified the assumption that the Debtor occupied the property, as that term is defined under New York RPAP § 631.

The Debtor claims that LSA had *actual* knowledge of the verbal nominee relationship and, for that reason, should have brought the action in ejectment as against Mrs. Baker. Mrs. Baker has testified in deposition that LSA was familiar with the nominee relationship between herself and the Debtor because she paid the monthly rental to LSA by checks which recited "Gloria Baker doing business as Sparrowbush Apartments." In fact, the only checks ever produced in the course of this or any litigation between the parties merely recite the name Sparrowbush Apartments and the *Debtor's* address. Although these checks were signed by Mrs. Baker, she was known to LSA as an officer of the Debtor.

LSA contends that the first time it ever heard Mrs. Baker's allegations concerning the nominee relationship was during the Westchester action, commenced in January 1985; that it consistently has maintained that the Debtor was the only tenant in the lease; and that thus it found no need, and certainly was not compelled to sue Mrs. Baker in the Albany County litigation over the lease. Although LSA admits that it had heard of Mrs. Baker's claim to the property shortly before it instituted the Albany action, LSA is correct in its assertion that New York law nonetheless did not require LSA to join Mrs. Baker as defendant in that action. Section 631 permits, but does not require, LSA to join as defendant others, such as Mrs. Baker, "claiming ... the right to the possession of" the apartment complex. Correspondingly, a judgment in ejectment affects the rights only of those occupants joined in the action.

■ Thus, absent facts establishing that Mrs. Baker was in continuous, open and *exclusive* possession of the property, LSA's

suit, brought against the Debtor alone, was proper under § 631. No contention of appellants can prevail against the conclusion that the default judgment was sufficient to terminate the Debtor's interest in the leasehold. The Court observes that this conclusion does not inhibit Mrs. Baker from litigating in state court her claims to the property as against LSA, and the Court understands that she is now doing so.

■ The Debtor also argues that its continued payment of the rental amount after the February 25, 1985, lease termination date and until LSA took possession on July 2, 1986, reinstated the leasehold interest. The Court finds no merit in this argument, raised for the first time on reargument of the motion in the court below.

■ The automatic stay does not operate to enjoin LSA from enforcing against the Debtor any rights which it may claim with respect to the apartment complex.

Accordingly, the Debtor's motion to punish for contempt, alleged violations of the automatic stay by LSA and the state court post-judgment receiver properly was denied. The Debtor's contempt motion in Bankruptcy Court was predicated on attempts by LSA and the receiver to enforce the March 27, 1986 order through contempt motions in the Albany County court. LSA and the receiver sought, among other things, to require the Debtor to transfer possession of the apartment complex and turn over tenants' security deposits. As Judge Schwartzberg noted:

"Indirect violations of the automatic stay are not tolerated and creditors may not pursue contempt proceedings to enforce the collection of prepetition claims or to obtain possession of the property of the estate." 62 B.R. at 377.

Because the Debtor lost any right to possession of the apartment complex and the security deposits when the lease was terminated, it follows that they were not part of the estate upon commencement of the bankruptcy proceeding, and the Debtor may not claim the benefit of the automatic stay as to them. Therefore, the state court contempt motions made by LSA and the receiver did not violate the automatic stay.

The Court now considers the appeal from denial of Gloria F. Baker's motion for an order directing the Debtor to transfer its alleged bare legal ownership of the leasehold to her on the ground that she is actually the equitable owner of the lease, and the Debtor is only her nominee. The Bankruptcy Court denied this motion. Because the Debtor's interest in the property terminated pre-petition, the Debtor had nothing to transfer, and the ruling of the Bankruptcy Court is affirmed for that reason.

■ The Bankruptcy Court treated Mrs. Baker's motion as arising under 11 U.S.C. § 554(b), which authorizes the Debtor or trustee in bankruptcy to abandon property burdensome to the estate. Section 554(b) reads:

"On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value to the estate."

Subsequent to a hearing, the Bankruptcy Court found that what remained property of the estate after termination of the leasehold interest—the $350,000.00 payment—was hardly a burdensome asset or of inconsequential value to the estate and thus this fund should not be abandoned to Mrs. Baker.

Mrs. Baker argues on appeal that, since she is the equitable leasehold owner of the property whose interest has not been terminated, the Debtor is not entitled to the $350,000.00 lease termination payment. Underlying this argument is the assumption that Mrs. Baker can indeed prove that she is the equitable leasehold owner. Such proof has yet to be made available to the Bankruptcy Court. Evidence in support of an equitable interest in favor of Mrs. Baker is, to put it charitably, very equivocal. Her payments to the transferor of the leasehold in 1973 and to the landlord LSA since then were made at a time when she was principal stockholder in the Debtor and was serving as an officer of the Debtor, and are

equally consistent with a loan or advance of funds to the Debtor or a capital investment in the Debtor. The record suggests that the concept of the Debtor acting as Mrs. Baker's nominee may well be a recent contrivance to deprive the creditors of this failing enterprise of the value of the leasehold interest.

Surprisingly, perhaps, Mrs. Baker has never filed a claim against the Debtor to the money, nor has she filed a proof of claim as a creditor of the Debtor's estate. To this date, Mrs. Baker has directed her efforts at recovering the property, or alternatively the money, solely as against LSA. That dispute, between Mrs. Baker and LSA, is of no concern to the Bankruptcy Court.

Finally, the Bankruptcy Court found that even if Mrs. Baker can prove that she is the equitable owner of the leasehold she has no colorable claim against the Debtor. If Mrs. Baker files a proof of claim for the $350,000.00, the trustee in bankruptcy would be entitled under § 544(a)(3) to set aside the unrecorded verbal nominee relationship, so as to claim the $350,000.00 lease termination payment for the benefit of the estate. 62 B.R. at 379–80.

Under § 544(a)(3), a trustee in bankruptcy has,

> "as of the commencement of the case, and without regard to any knowledge of the trustee or any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or an obligation incurred by the debtor that is voidable by—
> (3) a bona fide purchaser of real property ... from the debtor ... that obtains the status of a bona fide purchaser at the time of the commencement of the case ... whether or not such a purchaser ... exists."

Although a trustee has since been appointed, at the time of Mrs. Baker's motion, the Debtor was in possession and was entrusted with the rights and powers of a trustee in bankruptcy, including those delineated in § 544. 11 U.S.C. § 1107(a). The Debtor thus would not be bound by any obligation allegedly incurred pursuant to a verbal unrecorded nominee relationship.

Mrs. Baker argues that the trustee's so-called strong arm powers under § 544 would not apply to void her equitable interest because the trustee can be charged with knowledge of it. *McCannon v. Marston,* 679 F.2d 13 (3rd Cir.1982); *Matter of Quality Holstein Leasing,* 752 F.2d 1009 (5th Cir.1985). She claims that § 544(a)(3) is being used here as a "statutory black hole" to draw into the Debtor's estate interests in property which the Debtor never owned. However, as the Bankruptcy Court pointed out, the cases cited by Mrs. Baker charged the trustee with knowledge of the third party's interest only because the third party actually and openly possessed the disputed property against the debtor, or because the debtor defrauded the third party in obtaining the property, thereby creating a constructive trust. Neither of those circumstances are present here. The record does not reveal anything amounting to constructive notice of Mrs. Baker's alleged possession that would deprive the trustee of its status as a hypothetical bona fide purchaser. LSA's alleged knowledge of the verbal nominee relationship is irrelevant. There is no evidence that the Debtor defrauded Mrs. Baker. Indeed, it seems that she or her husband controlled the Debtor and could have caused the so-called verbal equitable interest to have been congealed in a writing at any time and recorded in the state land records. They did not do so.

The New York Real Property Law §§ 291 and 291–C then and now provide that an unrecorded interest in a lease for a term exceeding three years is *void* as against encumbrancers, purchasers or assignees for value and whose contract, conveyance or assignment is first duly recorded. The law is settled that conveyances of equitable interests in land are within the New York recording statute. *Tarbell v. West,* 86 N.Y. 280 (1881). The trustee in bankruptcy, standing in the shoes of a hypothetical *bona fide* purchaser for value, has the benefit of this statute as against

the unrecorded equitable interest claimed by Mrs. Baker.

The primary purpose of § 544—to protect a bankrupt's creditors against secret liens—would be ill-served by honoring an unrecorded title claim of an insider of the Debtor. Creditors reasonably could have relied on the Debtor's title to the property in extending credit. The Debtor in possession, as trustee in bankruptcy, was under a duty to avoid the unrecorded nominee relationship or equitable interest and claim the $350,000.00. If it failed to do so, a creditor's committee or trustee, with court approval, would have been entitled to pursue this asset.

Having determined that the Debtor's legal title to the leasehold was terminated prior to the filing of the bankruptcy petition, the Bankruptcy Court properly denied Mrs. Baker's motion to have the Debtor transfer that title to her.

The orders of the Bankruptcy Court appealed from are affirmed.

So Ordered.