### In re COHOES INDUSTRIAL TERMINAL, INC., Debtor.

**Bankruptcy No. 86 B 20201.**

United States Bankruptcy Court, S.D. New York.

Aug. 11, 1989.

Leon C. Baker, White Plains, N.Y., for debtor.

Anne E. Pitter, New York City, Chapter 7 Trustee.

Summit, Rovins & Feldesman, New York City, for the Chapter 7 trustee.

## DECISION ON FINAL APPLICATION OF CHAPTER 7 TRUSTEE AND COUNSEL FOR COMPENSATION

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The Chapter 7 trustee, Anne E. Pitter, and her attorneys, Summit, Rovins & Feldesman ("Summit"), have submitted applications for final allowance and compensation pursuant to 11 U.S.C. §§ 326 and 330, respectively. Leon C. Baker ("Baker"), as president and sole shareholder of the debtor, and as former counsel and special counsel for the erstwhile Chapter 11 trustee before conversion to Chapter 7 under the Bankruptcy Code, and as an unsecured creditor, has objected to the applications for allowances. Baker urges that the applications of the trustee and her counsel should be denied completely for their alleged breaches of their fiduciary duties.

On April 28, 1986, the debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. When the debtor filed its Chapter 11 petition it held a leasehold interest in an industrial terminal in Cohoes, New York, which was owned by a Baker-controlled partnership known as Cohoes Associates, subject to a mortgage held by another Baker-controlled entity. The Chapter 11 petition was not prompted by any pressure from the only two unsecured creditors of the industrial terminal who were not related to a Baker-controlled entity. There are no creditors holding secured claims against this debtor.

The Chapter 11 petition was filed by the debtor because Baker sought to prevent the loss of its other leasehold interest, a group of garden apartment buildings in Sparrowbush, New York which are owned by Latham Sparrowbush Associates ("LSA"). Pursuant to the long term lease for the garden apartment complex, LSA had the option to terminate the lease upon tendering $350,000.00 to the debtor for such termination. The debtor refused to accept the $350,000.00 termination fund and contended that the termination clause violated the rule against perpetuities. LSA obtained a state court default judgment terminating the lease and directing return of possession of the leasehold property to LSA. The appellate courts in New York refused to vacate the judgment, with the result that a receiver was appointed to take control of the garden apartment buildings and oust the debtor from possession. The Chapter 11 petition which the debtor filed in response to this prepetition litigation could not preserve the debtor's former leasehold when this court ruled that the automatic stay imposed upon filing the Chapter 11 petition did not protect debtor's leasehold interest in the garden apartment buildings because the prepetition lease termination prevented those buildings from being considered property of the estate. *In re Cohoes Industrial Terminal, Inc.*, 62 B.R. 369 (Bankr.S.D.N.Y.1986), *aff'd*, 70

B.R. 214 (S.D.N.Y.1986), *aff'd,* No. 87–5004 (2nd Cir. Sept. 18, 1987).

A Chapter 11 trustee was appointed by this court on October 10, 1986, because of Baker's various conflicting interests and because the debtor had not complied with the administrative obligations enforced by the United States trustee. During the Chapter 11 case, LSA, the owner of the repossessed garden apartment buildings in Sparrowbush, New York filed a proof of claim for over $2 million for damages, waste and additional contingent rent. After a trial, during which Baker acted as special counsel for the Chapter 11 trustee, LSA was able to establish its claim to the extent of $838,724.00. *In re Cohoes Industrial Terminal, Inc.,* 78 B.R. 681 (Bankr.S.D.N.Y.1987). This determination was affirmed by the District Court, 87 Civ. 8919 (S.D.N.Y. May 2, 1987, Brieant, C.I.) and the Court of Appeals, 88–5020–22 (2nd Cir. Oct. 20, 1988).

Having lost the leasehold interest in the garden apartment buildings, Baker terminated the debtor's occupancy of its only Chapter 11 leasehold, namely, the industrial terminal located in Cohoes, New York. At that juncture in this case, the debtor no longer had any business to operate because its other leasehold interest, the garden apartment complex in Sparrowbush, New York, was removed from the debtor's estate before the Chapter 11 petition was filed. Accordingly, this court granted a motion to convert this case for liquidation under Chapter 7 of the Bankruptcy Code on December 17, 1987. Pursuant to an order dated February 10, 1988, Anne E. Pitter was appointed as the Chapter 7 trustee. By order dated April 14, 1988, the trustee was authorized to retain Summit as counsel.

The Chapter 7 trustee took control of the debtor's assets which consisted of a fund of approximately $430,000.00, representing mainly the $350,000.00 lease termination fund paid by LSA together, with interest. The trustee, through its counsel, Summit, commenced an adversary proceeding against Baker and several of his affiliated entities seeking the value of the balance of the term at the industrial terminal lease which Baker took over when, as owner of the premises, he installed another Baker-controlled entity to operate the terminal. Baker contended that the debtor's leasehold interest had already terminated by its own term and that additionally, neither the Chapter 11 trustee nor the Chapter 7 trustee assumed the lease, with the result that it was automatically rejected in accordance with 11 U.S.C. § 365(d)(4). The trustee also sought to recover for the estate a $500,000.00 sum which a major subtenant had paid to Baker who had transferred the funds to the mortgagee, another Baker-controlled entity, pursuant to a rent assignment clause in the recorded mortgage. Moreover, the trustee sought to recover in the adversary proceeding certain payments made by the debtor just prior to the appointment of the Chapter 11 trustee, including the debtor's prepayment of approximately $35,000.00 to a public utility which the debtor contends was done for credit reasons, and the return of prepaid rent received from subtenants at the industrial terminal. These subtenants became subtenants of the newly installed Baker-controlled entity which replaced the debtor as lessee of the industrial terminal in Cohoes, New York. The total recovery sought by the trustee in the adversary proceeding was nearly $1,400,000.00.

This adversary proceedings lost significance after Baker's wife paid the LSA award of $838,724.00 in full, with the result that LSA was no longer the major creditor of this estate and Gloria Baker was subrogated to LSA's rights. Therefore, the remaining two small unsecured claims could be paid in full from the funds presently held by the Chapter 7 trustee.

At this point, this court suggested that there was no purpose in pursuing the trustee's adversary proceeding against Baker because after the payment of the two small unsecured claims and the compensation sought by the Chapter 7 trustee and her counsel, the remaining assets will be returned to the debtor, and its sole shareholder, Baker. The trustee was concerned that she continued to be responsible for filing income tax returns for the debtor. The

trustee and Baker disputed the manner in which the debtor's income tax liability was calculated. Baker believed that his interpretation of the facts resulted in no tax liability, or perhaps, a tax refund. The trustee believed that the debtor owed over $500,000.00 in taxes based upon the calculations of her accountants. After conferring with this court, it was agreed that the trustee would file income tax returns for the period during which she controlled the debtor and Baker would file income tax returns for the period before and during the Chapter 11 phase, when he guided the debtor's business operations. No tax claims have been filed in this case by any of the federal or state tax authorities.

Ultimately the Chapter 7 trustee and Baker stipulated to the discontinuance of the adversary proceeding in the best interests of the debtor's estate, which stipulation was approved by this court on August 11, 1989. Additionally, the debtor's motion to convert this case back to Chapter 11 under the Bankruptcy Code was approved by this court on August 8, 1989, with the debtor in possession. Pursuant to this conversion to Chapter 11, with the approval of the court, the Baker-controlled debtor will file a plan of reorganization providing for payment in full of all creditors other than those affiliated with Baker. The Baker-controlled debtor will also be responsible for the filing of income tax returns and will assume all responsibility for any taxes owed.

Baker's main reason for objecting to any compensation to the Chapter 7 trustee and her counsel stems from the income tax dispute. Baker proposed to resolve the open question regarding the debtor's income tax returns by commencing a proceeding under 11 U.S.C. § 505(b) which would require the governmental unit to notify the trustee within 60 days that the debtor's income tax returns which would be filed were selected for examination and that the examinations for such selected returns must be completed within 180 days thereafter. Baker objected to the income tax returns which the Chapter 7 trustee proposed to file because he believed that such returns maximized the debtor's liabili-

ties to a sum of approximately $500,000.00 and that the governmental authorities would have no reason to object to the returns he filed. Thus, Baker reasons that not only did the Chapter 7 trustee and her counsel propose to resolve all tax disputes against the debtor's interests, but that they undermined the debtor's interests by confessing a judgment against the estate for much more than Baker's interpretation of the tax liability would show. The conference with the court resolved this dispute.

Notwithstanding Baker's objections, there has been no finding that the Chapter 7 trustee and her counsel breached their fiduciary duties to this estate. Moreover, Baker's objections to the merits of the claims asserted by the Chapter 7 trustee in her adversary proceeding against him remain unresolved because the adversary proceeding was discontinued because this court believed that the continuation of such action was pointless after LSA, the only active creditor in this case, was paid in full by Gloria Baker. The payment in full to LSA was prompted by the fact that this court's ruling as to the termination of the Sparrowbush lease had been affirmed by the District Court and the Court of Appeals. Additionally, the ruling as to the debtor's liability to LSA for damages and waste was also affirmed by the District Court and the Court of Appeals. Thereafter, there was no further purpose to be achieved in continuing the Chapter 7 trustee's adversary proceeding because the debtor's assets will revert to Baker after the payment of the two small unsecured claims and the administration expenses of this case.

The litigation regarding the termination of the Sparrowbush lease and the extent of LSA's claim was conducted by LSA's counsel. Additionally, LSA's counsel was retained as special counsel for the Chapter 7 trustee to conduct the litigation with Baker. As special counsel, this firm has already been awarded compensation by this court for their services, along with those of the Chapter 11 trustee and his counsel.

## DISCUSSION

■ For the services performed by the Chapter 7 trustee since her appointment on February 10, 1988, an application for an allowance has been submitted for the statutory maximum under 11 U.S.C. § 326 in the sum of $34,373.85. In computing her fee, the Chapter 7 trustee takes into consideration the sum of $838,724.00 which Gloria Baker paid to satisfy LSA's claim in full. This payment did not eliminate this claim, it simply subrogated Gloria Baker as a creditor instead of LSA. Obviously, Leon Baker does not intend to pay any of the Baker-controlled entities, including his wife, Gloria Baker, because it would only mean taking funds from one of his pockets and putting them into another of his pockets in the same trousers. However, the $838,-724.00 claim has not been distributed by the trustee because the payment by Gloria Baker to LSA simply substituted one creditor for another. Therefore, this figure should not be counted for purposes of computing the trustee's maximum compensation.

The Chapter 7 trustee maintains that the adversary proceeding which the Chapter 7 trustee commenced against Baker, even though discontinued, was additional pressure for the satisfaction of LSA's claim. The adversary proceeding had significance only if the debtor's estate had to pay the LSA claim in the sum of $838,724.00. The assets on hand in the estate were insufficient to pay this claim and therefore, the trustee had a duty to maximize the assets of the estate by attempting to recover any additional claims assertable by the estate. However, when the Second Circuit Court of Appeals affirmed the $838,724.00 LSA claim, it was clear that Gloria Baker was personally liable for this amount because of her judicial admission that she was the principal and beneficial owner of the Sparrowbush lease and that she was personally liable because the debtor was her nominee. Therefore, when she assumed her personal liability and paid this claim, the assets in the estate were more than sufficient to pay the remaining claims. Hence, the adversary proceeding lost its significance and served no further benefit to the estate because any recovery as a result of such further litigation would only revert to the debtor following the payment of administration expenses and the pending claims.

Although the adversary proceeding commenced by the Chapter 7 trustee did not produce any tangible benefits for this estate, because the assets will revert to Baker after the payment of the two small claims and no satisfaction of the expenses of administration, the Chapter 7 trustee was obligated to pursue all causes of action on behalf of the estate, especially since she had no way of knowing that Gloria Baker would assume her previously declared personal liability and pay LSA in full. The Chapter 7 trustee was also obligated to file income tax returns for the debtor and to supervise this chore until this responsibility was resolved by stipulation. Based upon the time expended for her services, the Chapter 7 trustee computes her fee to be $20,042.00. However, included in this figure are time changes for other persons employed by the trustee's law firm, which amount to $4,685.00.

For the service which the Chapter 7 trustee performed in this case, this court is satisfied that $10,000.00 constitutes a fair and reasonable compensation for her stewardship.

■ The firm of Summit, Rovins & Feldesman seeks compensation pursuant to 11 U.S.C. §§ 327 and 330 in the total sum $162,468.75. By order of this court dated December 14, 1988, counsel for the Chapter 7 trustee were awarded interim fees of $58,982.55 and reimbursement for disbursements of $4,607.68. However, $20,643.00 was "held back" until the conclusion of the case. The trustee's counsel's final allowance application now includes the $20,-643.00 previously held back and an additional sum of $103,486.20, for a total of $162,468.75. This sum is in addition to the $54,300.00 which was awarded as final compensation to the firm of Zubres, D'Agostino & Hoblock, which had been appointed as special counsel to the Chapter 7 trustee to pursue the litigation with Baker. The Zubres firm was retained because this

firm had continuous involvement in this case as counsel for LSA, the debtor's main creditor, and were fully familiar with the activities of the debtor as a result of their participation on behalf of LSA. The Zubres firm carried the laboring oar in this case, which resulted in the payment of LSA in full.

Certainly, there was bound to be some duplication of billing as a result of the joint services of the Zubres firm and the Summit firm, both acting for the Chapter 7 trustee. However, it was clear that further litigation was unnecessary after Gloria Baker paid the LSA claim in full. The debtor and Baker previously agreed with the Zubres and Summit firms that their joint application for compensation would not be objected to if the aggregate compensation to the Chapter 7 trustee and her two law firms did not exceed $157,500.00. The Zubres firm was satisfied with this proposal and accepted the $54,300.00 which this court found to be a fair and reasonable fee. However, the trustee and the Summit firm did not agree to apply for the remaining $103,200.00 stipulation figure and applied instead for $34,373.85 on behalf of the Chapter 7 trustee and $164,468.75 for counsel. Thus, the combined applications of the trustee and the Summit firm totals $198,842.60, notwithstanding that the trustee's special counsel was already awarded $54,300.00 and has no interest in this fee application.

Having awarded the Chapter 7 trustee a final compensation in the sum of $10,000.00 and her special counsel $54,300.00, the court finds that the Summit firm should receive a total of $85,000.00 for their services in this case as fair and reasonable compensation, together with the previously allowed expenses of $4,607.68 and subsequently incurred expenses of $1,401.99.

In concluding that an $85,000.00 award to the Summit firm for their services to the Chapter 7 trustee is fair and reasonable, this court has taken into consideration the fact that the Zubres firm, which acted as joint counsel for the trustee for purposes of the adversary proceeding assumed the dominant role in the aborted adversary proceeding against Baker, for which they received $54,300.00. Thus, the combined awards to the two law firms representing the Chapter 7 trustee will total $139,300.00. Additionally, the Chapter 11 trustee has received $15,448.76 for his services and his attorneys have been paid for their legal services the sum of $53,677.00. Thus, apart from disbursements and an undefined tax liability, it will cost this estate for the services of the two trustees and their counsel the total of $218,425.76 in order to achieve the two major objectives in the bankruptcy litigation, namely, the confirmation of the termination of the Sparrowbush lease for the estate's receipt of $350,000.00 and the liquidation and payment of the LSA claim in the sum of $838,724.00.

The balance of the fee requested by the Summit firm for their legal services to the Chapter 7 trustee is disallowed because this amount namely, $77,468.15, exceeds the reasonable benefit derived by this estate for such services. After the Court of Appeals affirmed the LSA damage claim and Gloria Baker paid LSA in full in accordance with her previously stated position that she personally assumed the debtor's obligations under the Sparrowbush lease, there were sufficient funds in this estate to pay all filed, liquidated claims in full and to permit the excess assets to revert to the debtor. This court's determination of what constitutes a reasonable fee has been guided by the so-called twelve Johnson factors expressed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1984). *See In re Texaco*, 90 B.R. 622, 631–632 (Bankr.S.D.N.Y.1988), *aff'd*, 92 B.R. 38 (S.D.N.Y.1988). In light of the facts and circumstances in this case, the total of $85,000.00 for the Summit firm's legal services to the Chapter 7 trustee, when added to the $54,300 received by the trustee's special counsel, is amply fair and reasonable.

## ORDER

1. This court has jurisdiction of the subject and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceed-

ing in accordance with 28 U.S.C. § 157(b)(2)(A).

2. The Chapter 7 trustee shall receive as final compensation for her services in this case in accordance with 11 U.S.C. § 326, the sum of $10,000.00.

3. The firm of Summit Rovens & Feldesman shall receive as final compensation for their legal services to the Chapter 7 trustee in accordance with 11 U.S.C. §§ 327 and 330, the sum of $85,000.00, together with properly incurred expenses of $6,009.67. Having previously received the sum of $38,339.55 for interim fees and expenses, this firm shall receive from this estate the additional sum of $52,670.12 as final compensation for legal services and expenses.

It is so ordered.